JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Eliyahu Mirlis

### DEFENDANTS

Edgewood Elm Housing, Inc., F.O.H., Inc., Edgewood Village, Inc., Edgewood Corners, Inc., and Yedidei Hagan, Inc.

**(b)** County of Residence of First Listed Plaintiff    Middlesex, NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Matthew K. Beatman, Eric Henzy, and John L. Cesaroni, Zeisler & Zeisler, P.C., 10 Middle Street, 15th Floor, Bridgeport, CT 06604, (203) 368-4234

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT

- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### TORTS

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☒ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### FORFEITURE/PENALTY

- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR

- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### BANKRUPTCY

- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS

- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

### SOCIAL SECURITY

- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS

- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES

- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

### REAL PROPERTY

- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### CIVIL RIGHTS

- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS

**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### IMMIGRATION

- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(a)(1)

Brief description of cause:
Piercing/reverse-piercing the corporate veil

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 21,955,740.27

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE Hon. Michael P. Shea

DOCKET NUMBER 3:16-cv-00678

DATE
05/08/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/ Matthew K. Beatman

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ELIYAHU MIRLIS,

      Plaintiff,                       Case No._____

v.

EDGEWOOD ELM HOUSING, INC.,
F.O.H., INC., EDGEWOOD VILLAGE,
INC., EDGEWOOD CORNERS, INC.,
AND YEDIDEI HAGAN, INC.

      Defendants.

## **COMPLAINT**

The Plaintiff, Eliyahu Mirlis ("Plaintiff"), for his complaint against Edgewood Elm Housing, Inc. ("Edgewood Elm"), F.O.H., Inc. ("FOH"), Edgewood Village, Inc. ("Edgewood Village"), Edgewood Corners, Inc. ("Edgewood Corners"), and Yedidei Hagan, Inc. ("YH" and collectively with Edgewood Elm, FOH, Edgewood Village, and Edgewood Corners, "Defendants"), alleges as follows:

## **PRELIMINARY STATEMENT**

1.      By this action, the Plaintiff seeks to hold Defendants liable for the judgment that Plaintiff obtained against Daniel Greer ("D. Greer") and the Yeshiva of New Haven, Inc. (the "Yeshiva"), in the action captioned *Eliyahu Mirlis v. Daniel Greer et al.*, 3:16-cv-00678 (MPS) (the "Underlying Action").  In his Third Amended Complaint filed in the Underlying Action, the Plaintiff alleged that D. Greer had sexually abused, exploited and assaulted him for a period of some three years while he was a boarding student at the Yeshiva (the "Abuse").  On or about May 18, 2017, the jury in Underlying Action returned its verdict against D. Greer and the Yeshiva, finding that Plaintiff had proven each of the causes of action alleged against them in the Third Amended Complaint.  The jury awarded Plaintiff $15,000,000 in compensatory damages and

found that Plaintiff was entitled to punitive damages from both D. Greer and the Yeshiva.  On June 6, 2017, the Court in the Underlying Action entered a judgment against D. Greer and the Yeshiva in the total amount of $21,749,041.10, including $5,000,000.00 in punitive damages and $1,749,041.10 in offer-of-compromise interest (the "Judgment").  The Judgment remains almost completely unsatisfied, and the outstanding amount of the Judgment has increased on account of accruing post-judgment interest.

2.      D. Greer completely dominated and controlled Defendants, which at all relevant times together with D. Greer and the Yeshiva operated as a single enterprise (collectively, D. Greer, the Yeshiva and Defendants are referred to hereinafter as the "Enterprise").  Defendants never truly had any separate existence apart or independence from D. Greer and the Yeshiva.  D. Greer used his complete control over Defendants to perpetrate some of the Abuse against the Plaintiff.  Among other things, D. Greer repeatedly abused the Plaintiff on property owned by Defendants, i.e., he used his control over Defendants in order to use Defendants' property as locations to abuse the Plaintiff.  Defendants never protested or put a stop to this use of their property, as Defendants had no minds of their own and were completely controlled by D. Greer.

3.      In addition to D. Greer's unrestrained use of the Debtors' property to abuse the Plaintiff, D. Greer's domination and control over Defendants at all relevant times is further evidenced by, among other things, a complete absence of corporate formalities in the governance of Defendants; the commingling of funds and services between Defendants and D. Greer and the Yeshiva; completely overlapping officers, directors and personnel; the lack of business discretion exercised by any of Defendants; and the failure of D. Greer and the Yeshiva to deal with Defendants at arms-length.

4.      D. Greer has used this Enterprise to hold assets in Defendants' hands, in the form of money and property, for the benefit of himself, his wife, Sarah Greer ("S. Greer"), and the Yeshiva so that the Yeshiva and D. Greer do not hold any significant assets but Defendants are able to provide funds to the Yeshiva and D. Greer to use at their discretion. This is accomplished by Edgewood Village, Edgewood Corners, and FOH funneling their income from, *inter alia*, collecting rent on residential properties they own, to Edgewood Elm and YH, both of whom hold substantial liquid and other assets. Then, YH transfers funds in incremental amounts to the Yeshiva at the direction of D. Greer, to, among other things, fund its programs and pay a salary and retirement benefits to S. Greer. Edgewood Elm transfers money to D. Greer in the form of salary and retirement benefits as well as to the employees of Edgewood Elm, who are technically paid by that entity, but who also perform services interchangeably for all Defendants and the Yeshiva.

5.      Based on the foregoing, the Plaintiff seeks to pierce the corporate veil of Defendants in order to hold Defendants liable for the Judgment. Adherence to the fiction of separate identity in the facts and circumstances would serve only to defeat justice and equity, in that D. Greer uses Defendants asserted separate existence to shield himself and the Yeshiva from Plaintiff's efforts to collect on the Judgment. Thus, the Enterprise solely controlled by D. Greer, operates for the purpose of hindering, delaying, and frustrating the collection of Plaintiff's Judgment, while at the same time D. Greer and the Yeshiva are benefitted.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) based on diversity of citizenship as the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and Plaintiff and Defendants are citizens of different states.

7.     Venue of this action in the District of Connecticut is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this district and a substantial amount of the events or omissions giving rise to this claim occurred in this district.

## PARTIES AND KEY NONPARTIES

8.     Plaintiff is an individual who resides in and is a citizen of the State of New Jersey.

9.     Edgewood Elm is a non-stock corporation incorporated in the State of Connecticut with its principle place of business in New Haven, Connecticut.

10.     FOH is registered as a non-stock corporation incorporated under the laws of the State of Connecticut with its principle place of business in New Haven, Connecticut.  FOH owns residential properties in New Haven, Connecticut, and derives majority of its income from renting the such properties to tenants.

11.     Edgewood Village is registered as a non-stock corporation incorporated under the laws of the State of Connecticut with its principle place of business in New Haven, Connecticut. Edgewood Village owns residential properties in New Haven, Connecticut, and derives majority of its income from renting the such properties to tenants.

12.     Edgewood Corners is registered as a non-stock corporation incorporated under the laws of the State of Connecticut with its principle place of business in New Haven, Connecticut. Edgewood Corners owns residential properties in New Haven, Connecticut, and derives majority of its income from renting the such properties to tenants.

13.     Yedidei Hagan is registered as a non-stock corporation incorporated under the laws of the State of Connecticut with its principle place of business in New Haven, Connecticut.

14.     Nonparty the Yeshiva is a non-stock corporation incorporated under the laws of the State of Connecticut with its principle place of business in New Haven, Connecticut.

4

15.     Nonparty D. Greer is an individual who resides in and is a citizen of the State of Connecticut.

16.     Nonparty S. Greer is an individual who resides in and is a citizen of the State of Connecticut. S. Greer is the wife of D. Greer, and they have been married since 1971.

17.     S. Greer and D. Greer currently live together as husband and wife and are not estranged from each other.

## FACTS COMMON TO ALL COUNTS

18.     Plaintiff commenced the Underlying Action in the United States District Court for the District of Connecticut against D. Greer and the Yeshiva on May 3, 2016.

19.     Plaintiff alleged in his original Complaint, and ultimately in his Third Amended Complaint (the "Third Amended Complaint"), *inter alia*, that beginning in 2002, when Plaintiff was between the ages of fifteen (15) and seventeen (17) years old and a student at the Yeshiva, D. Greer repeatedly and continuously sexually abused, exploited, and assaulted him; that during the years prior to his sexual molestation of the Plaintiff, D. Greer sexually abused, molested and exploited at least one other minor boy in the custody and care of the Yeshiva; that D. Greer forced the Plaintiff to engage in sex acts with him, including forced fellatio, anal sex, fondling and masturbation; that D. Greer frequently gave the Plaintiff alcohol at the time D. Greer raped and assaulted the Plaintiff; that D. Greer showed the Plaintiff pornographic films; and that D. Greer anally raped, sodomized and in other ways sexually assaulted, abused and molested the Plaintiff dozens and dozens of times, with each incident lasting on average from one to four hours and sometimes all night.

20.     D. Greer raped, sodomized and sexually assaulted the Plaintiff at, among other places, rental properties owned by Edgewood Elm, Edgewood Village and FOH.  Specifically, D.

Greer raped, sodomized and sexually assaulted the Plaintiff at properties located at 77 Elm Street, 203, 209 and 211 Norton Street, 139 West Park Avenue, 439 Edgewood Avenue, and 193 Maple Street.

21.     As described herein, at all relevant times Defendants and the Yeshiva exhibited a complete lack of corporate formalities; Defendants' funds were taken from Defendants for the personal and other use of D. Greer and S. Greer; Defendants and the Yeshiva had overlapping ownership, officers, directors, and personnel; Defendants and the Yeshiva used common office space, addresses, and phones; Defendants and the Yeshiva exercised no independent business discretion; D. Greer did not deal with Defendants and the Yeshiva at arm's length; Defendants and the Yeshiva were not treated as independent profit centers; Defendants and the Yeshiva paid each other's debts; and Defendants and the Yeshiva used each other's property as if it was their own.

22.     At all relevant times herein, D. Greer was the president, a director, and in complete control of all Defendants and the Yeshiva.

23.     Edgewood Elm, Edgewood Village, and FOH knew that D. Greer was using their properties to abuse the Plaintiff, because they are imputed with the knowledge of D. Greer, their president, director and person in complete control.

24.     Rather than prevent their property from being used by D. Greer to perpetrate his abuse against the Plaintiff as a property owner dealing with a third party on a normal basis would, because of D. Greer's complete control over them, Edgewood Elm, Edgewood Village and FOH never took any action to prevent D. Greer from sexually abusing the Plaintiff on their properties and affirmatively allowed D. Greer to use their properties to perpetrate his abuse against the Plaintiff.

25.     At all relevant times herein, S. Greer was an officer and a director of the Yeshiva and all Defendants.

26.     At all relevant times, all non-routine decisions about the management of the Yeshiva and Defendants, including without limitation decisions to acquire or transfer property of the Yeshiva and Defendants, were made by D. Greer.

27.     At all relevant times, D. Greer made such decisions on behalf of the Yeshiva and Defendants without holding formal board meetings or obtaining a vote from the board of directors of any of Defendants or the Yeshiva.

28.     At all relevant times, the boards of directors of the Yeshiva and Defendants did not have formal meetings or keep minutes.

29.     On June 5, 2018, D. Greer, both individually and as a representative of the Yeshiva, was deposed by Plaintiff in connection with the Judgment. During that deposition, Plaintiff's counsel inquired as to certain information regarding Defendants, including but not limited to:

     a.   property owned by Defendants;

     b.   officers, directors, and employees of Defendants;

     c.   who signs checks, including paychecks, for Defendants;

     d.   transactions between Defendants and the Yeshiva;

     e.   individuals who provide services to Defendants;

     f.   who hires, fires, and manages employees of Defendants;

     g.   the frequency of meetings of the boards of directors of Defendants and whether minutes were created;

     h.   whether Defendants made or received transfers;

     i.   whether debts were owed to or by Defendants;

    j.   leasing and management of Defendants' real property;

    k.   the extent to which D. Greer, S. Greer, and employees perform work for each of Defendants;

    l.   professionals employed by Defendants; and

    m.   the source of Defendants' funds.

30.    On or about June 14, 2018, just over a week after he was deposed, D. Greer filed documents with the Connecticut Secretary of State changing certain directors of Edgewood Village, Edgewood Elm, and FOH. In addition, certain directors were added to Edgewood Corners. Upon information and belief, D. Greer and S. Greer maintained their positions as officers and directors of these entities despite the changes.

31.    Upon information and belief, D. Greer caused directors of certain of Defendants to be added or replaced in an effort to disguise the interrelated nature of the Yeshiva and Defendants and the Enterprise despite the fact that he maintained management and control over them.

32.    At all relevant times, D. Greer had authority to unilaterally divest Edgewood Village and FOH of assets, without a vote from their respective boards of directors.

33.    At all relevant times, D. Greer solely directed the transfer of assets among Defendants and from Defendants to himself, the Yeshiva, and S. Greer.

34.    While S. Greer is a joint signatory with D. Greer on the bank accounts held by the Yeshiva and Defendants, she allegedly is not responsible for the management and control of the Yeshiva and Defendants.

35.    S. Greer is employed by the Yeshiva and has been employed by the Yeshiva for at least the past ten (10) years, and she has received and continues to receive a regular salary from the Yeshiva.  S. Greer has been the sole employee of the Yeshiva since sometime in 2016.

36.     During the time that she has been employed by the Yeshiva, S. Greer has received retirement benefits from the Yeshiva in an amount nearly equal to her salary. S. Greer does not receive compensation directly from any of Defendants.

37.     At all relevant times, D. Greer was employed by Edgewood Elm and receives a regular salary as well as retirement benefits from it.

38.     Despite only being paid by a particular entity, D. Greer and S. Greer perform services for each Defendant and the Yeshiva.

39.     Employees for Edgewood Elm, including its bookkeeper, secretary, and maintenance staff, perform services for each Defendant and the Yeshiva.

40.     Apart from Edgewood Elm and upon information and belief, the other Defendants have no employees and all necessary services for said entities are performed by the employees of Edgewood Elm, D. Greer, and/or S. Greer.

41.     D. Greer manages the employees of Edgewood Elm, and upon information and belief, has the sole authority to hire and fire such employees.

42.     The secretary employed by Edgewood Elm also does work for Greer, the Yeshiva, and Defendants, and she has an office at the Yeshiva where she may be reached at the Yeshiva's number.

43.     The bookkeeper, who performs services for the Yeshiva and Defendants and is employed by Edgewood Elm, has an office at a building owned by Edgewood Corners.

44.     Edgewood Elm does not pay Edgewood Corners rent for the use of said office space.

45.     Routine bills of the Yeshiva and Defendants are handled by the secretary and bookkeeper employed by Edgewood Elm.

46.     Employees of Edgewood Elm also perform cleaning services for the Yeshiva.

47.     D. Greer has two offices, one at a property owned by Edgewood Corners and another at the Yeshiva that he shares with S. Greer. Edgewood Elm does not pay for the use of the offices in the property owned by Edgewood Corners or the property owned by the Yeshiva.

48.     The Yeshiva and Defendants have the same accountant, and D. Greer manages and controls the employment of and interaction with the accountant on their behalf.

49.     The Yeshiva and Defendants share offices, Post Office boxes, and telephone numbers.

50.     The Yeshiva and Defendants do not reimburse each other for the use of each other's services or property.

51.     The other Defendants do not pay a fee to Edgewood Elm for the property management services it provides to them.

52.     Religious services for YH are held at the Yeshiva, and YH does not pay for the use of the facilities.

53.     Of the approximately forty-eight properties owned by Defendants, approximately twenty-one were acquired between 2002 and 2014, at a time when Defendants and the Yeshiva were aware that D. Greer had abused the Plaintiff and that the Plaintiff had claims against D. Greer, as the knowledge of D. Greer is imputed to them because D. Greer was at all relevant times their president, director and person in control.

54.     After using funds derived from renting their properties and any other income for, among other things, paying the expenses for the properties, Edgewood Corners, Edgewood Village and FOH (collectively, the "Upstream Entities") transfer the bulk of their remaining funds to YH and Edgewood Elm (together, the "Downstream Entities") at the sole direction of D. Greer.

55.     The Upstream Entities acquired a significant number of the Properties in 2002 or later, and specifically:

  a.   Edgewood Village acquired twelve of the twenty-three Properties that it owns between 2002 and 2014; and

  b.   FOH acquired eight of the seventeen Properties that it owns between 2002 and 2013.

56.     In addition, upon information and belief, Edgewood Village acquired 784 Elm Street, New Haven, Connecticut ("784 Elm") for the sum of $95,000.00 in 2014, which was owned at the time of transfer by D. Greer, Harold Hack, and Edgewood Village. Upon further information and belief, 784 Elm was acquired by Edgewood Village for less than reasonably equivalent value.

57.     The Downstream Entities are used in order to hold funds received from the Upstream Entities, which are then distributed to the Yeshiva, D. Greer, and S. Greer in incremental amounts.

58.     Edgewood Elm maintains a substantial amount of cash and other liquid assets. It held approximately $800,000.00 in liquid assets as of the end of 2016, and upon information and belief continues to hold substantial amounts of cash or other liquid assets.

59.     YH distributes funds to the Yeshiva or on the Yeshiva's behalf as directed solely by D. Greer.

60.     YH maintains significant assets, including cash or other liquid assets. It held approximately $100,000.00 in liquid assets as of the end of 2016, and upon information and belief, continues to hold substantial amounts of cash or other liquid assets.

61.     The Yeshiva uses funds that it receives, *inter alia*, to pay S. Greer and fund her retirement account (the "Retirement Account"). (Transfers from the Yeshiva to the Retirement Account are referred to herein as the "Retirement Account Transfers.")

62.     S. Greer does not oversee or manage the Retirement Account or the Retirement Account Transfers or even review statements.

63.     Upon information and belief, D. Greer oversees and manages the Retirement Account, including but not limited to monitoring statements and directing the Retirement Account Transfers.

64.     Upon information and belief, the Yeshiva and/or D. Greer, as the person in control of the Yeshiva and Defendants, orchestrated the payment of the Retirement Account Transfers to Defendant and the payment of a salary only to Defendant for the benefit of Defendant and D. Greer, while paying no such benefits to D. Greer, for the purpose of transferring assets from the Yeshiva and D. Greer to S. Greer to hinder Plaintiff's collection of his Judgment against the Yeshiva and D. Greer.

65.     In addition, for several years and upon information and belief since at least 2002, money earned by S. Greer from the Yeshiva was saved and not used, and money earned or received by D. Greer was used to pay the expenses and make charitable contributions of both D. Greer and S. Greer.

66.     As a result, D. Greer disposed of his funds to pay bills and expenses, the purpose of which was to denude D. Greer and the Yeshiva of assets while allowing S. Greer to retain assets so that D. Greer and the Yeshiva could avoid paying their creditors, including Plaintiff.

67.     Upon information and belief, the Upstream Entities acquired properties from 2002 and after at the direction of D. Greer for the purpose of generating additional income for the

Upstream Entities, which income would then be held by the Downstream Entities to be distributed at D. Greer's instruction to the Yeshiva, D. Greer, and S. Greer.

68.     Upon information and belief, the purpose of using the Upstream Entities to acquire and hold the Properties and the Downstream Entities to hold assets for the benefit of the Yeshiva, D. Greer, and S. Greer is to allow D. Greer and the Yeshiva to hinder, delay, and defraud their creditors in that, without limitation, the Downstream Entities are used to hold and shield from collection assets that are held for the Yeshiva, D. Greer, and S. Greer, while at the same time allowing D. Greer and the Yeshiva to receive funds to use in their discretion without exposing the vast majority of the funds to the collection activities of creditors, including Plaintiff.

**First Claim for Relief As To All Defendants (Piercing the Corporate Veil – Identity Theory)**

69.     Paragraphs 1 through 68 are repeated and realleged as if fully set forth herein.

70.     At all relevant times, there was such a unity of interest and ownership among the Yeshiva and Defendants that their independence had in effect ceased or had never begun..

71.     Adhering to the fiction that Defendants had or have separate identities would only serve to defeat justice and equity by permitting Defendants to escape liability for the Judgment, which arose out of an operation conducted by all Defendants for the benefit primarily of the Yeshiva, D. Greer and S. Greer, and conduct for which all of Defendants should bear responsibility due to their knowledge of the conduct and failure to stop it.

72.     At all relevant times, Defendants were operated under the complete control of D. Greer to shield the Yeshiva and D. Greer from their creditors, including Plaintiff, as part of D. Greer and the Yeshiva's efforts to hinder, delay, and defraud their creditors, including Plaintiff.

73.     Defendants have been so controlled and dominated by D. Greer that justice requires liability to be imposed on them.

74.     Piercing the corporate veil of Defendants to hold them liable for the Judgment will not cause harm to innocent third parties, and therefore is fair and equitable.

75.     This Court should pierce the veil of the Enterprise and hold each of Defendants liable for the Judgment.

**Second Claim for Relief As To All Defendants (Reverse-Piecing the Corporate Veil – Instrumentality Theory)**

76.     Paragraphs 1 through 75 are repeated and realleged as if fully set forth herein.

77.     At all relevant times, D. Greer exercised complete domination over the finances, policies and business practices of Defendants so that Defendants had no separate mind, will, or existence of their own.

78.     D. Greer used such control to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, and/or a dishonest or unjust act in contravention of Plaintiff's rights in that with full knowledge of Defendants D. Greer used Defendants' property to perpetrate his abuse against the Plaintiff and to shield assets from Plaintiff while providing an income stream to himself, the Yeshiva and S. Greer.

79.     D. Greer's control of Defendants proximately caused the Plaintiff's injuries, in that D. Greer was able to use Defendants' property without restraint in perpetrating his abuse against the Plaintiff and was able to shield  property available to D. Greer from being available for collection of the Judgment.

80.     Defendants have been so controlled and dominated by D. Greer that justice requires liability to be imposed on them.

81.     Reverse-piercing the corporate veil of Defendants to hold them liable for the Judgment will not cause harm to innocent third parties, and therefore is fair and equitable.

82.     This Court should reverse-pierce the veil of the Enterprise and hold each of Defendants liable for the Judgment.

**WHEREFORE**, the plaintiff, Eliyahu Mirlis, respectfully requests that this Court enter the following relief in his favor and against Defendants as follows:

a.      Entry of an Order piercing the veil of the Enterprise and holding Edgewood Elm, Edgewood Village, Edgewood Corners, FOH, and YH liable for the Judgment;

b.      Entry of an Order reverse-piercing the veil as to D. Greer and holding Edgewood Elm, Edgewood Village, Edgewood Corners, FOH, and YH liable for the Judgment;

c.      Reasonable attorneys' fees;

d.      Pre-judgment interest;

e.      Costs; and

f.      Such other and further relief as the Court deems just and proper.

Dated at Bridgeport, Connecticut, this 8th day of May, 2019.

> THE PLAINTIFF,
> ELIYAHU MIRLIS
>
> By: _/s/ Matthew K. Beatman_
>      Matthew K. Beatman (ct08923)
>      Eric Henzy (ct12849)
>      John L. Cesaroni (ct29309)
>      ZEISLER & ZEISLER, P.C.
>      10 Middle Street, 15th Floor
>      Bridgeport, Connecticut 06604
>      Tele: (203) 368-4234
>      Fax: (203) 367-9678
>      Email: mbeatman@zeislaw.com
>                ehenzy@zeislaw.com
>                jcesaroni@zeislaw.com