### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ELIYAHU MIRLIS, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:19-cv-700 (CSH) |
| v. | ) ) | |
| EDGEWOOD ELM HOUSING, INC., F.O.H., INC., EDGEWOOD VILLAGE, INC., EDGEWOOD CORNERS, INC., and YEDIDEI HAGAN, INC., | ) ) ) ) ) | **JANUARY 21, 2022** |
| Defendants. | ) ) | |

### RULING ON DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER [DOC. 69] AND DEFENDANTS' MOTION TO SEAL LEGAL FEES AFFIDAVITS [DOC. 77]

**HAIGHT, Senior District Judge:**

The captioned Defendants are currently operating pursuant to a Temporary Restraining Order, Doc. 43, which the Court filed on August 25, 2020. In a pending motion ("Motion to Modify"), Doc. 69, Defendants request to modify the TRO in certain particulars. Plaintiff, who obtained the TRO, objects to Defendants' Motion to Modify. In support of their Motion to Modify, Defendants submitted four affidavits ("Affidavits"), Doc. 78, related to their request to modify the TRO to pay certain legal fees and costs. In another pending motion ("Motion to Seal"), Doc. 77, Defendants request to file these Affidavits under seal. Plaintiff also objects to Defendants' Motion to Seal. This Ruling resolves Defendants' Motion to Modify and Defendants' Motion to Seal.

The genesis of this diversity action is found in an earlier, separate action brought by the Plaintiff, Eliyahu Mirlis ("Plaintiff" or "Mirlis"), against non-Parties Daniel Greer ("Greer") and

1

the Yeshiva of New Haven, Inc. (the "Yeshiva"), wherein Mirlis alleged Greer subjected him to sexual abuse while Mirlis was a student at the Yeshiva.  Following a jury trial before Judge Shea, Mirlis obtained a judgment ("Judgment") against Greer and the Yeshiva for compensatory and punitive damages, in the total amount of $21,749,041.10. Greer and the Yeshiva appealed. The Second Circuit affirmed Mirlis's Judgment in the Underlying Action against Greer and the Yeshiva. *See Mirlis v. Greer*, 952 F.3d 36 (2d Cir. 2020).

Mirlis's Judgment against Greer and the Yeshiva remains unpaid, thereby setting the stage for the present action, wherein Mirlis contends that the five corporate Defendants are liable to pay the Judgment.  That liability is said to result from the doctrine of reverse corporate veil piercing.  Specifically, Plaintiff's Complaint asserts two, alternative veil piercing claims: one based on the identity rule and one based on the instrumentality rule.  Defendants deny any liability to pay Plaintiff's Judgment against Greer and the Yeshiva.

In an earlier ruling, the Court denied Defendants' motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint.  *See Mirlis v. Edgewood Elm Hous., Inc.*, No. 3:19-CV-700 (CSH), 2020 WL 4369268 (D. Conn. July 30, 2020).  The principal question of Defendants' liability to pay Plaintiff's Judgment against Greer and the Yeshiva is now the subject of Defendant's pending Motion for Summary Judgment, Doc 51.  This Ruling does not decide Defendants' Motion for Summary Judgment.

## I.   DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER

### A.   Background on the TRO and Defendants' Motion to Modify

The TRO Plaintiff obtained from the Court enjoins the five corporate Defendants from "(a) transferring or encumbering any of their personal property, other than to pay any of their employees, with the exception of [Greer], and perform reasonable maintenance on real property

they own; or (b) transferring or encumbering any of their real property . . . ."  Doc. 43 at 1-2.

On August 21, 2020, Plaintiff requested a TRO in conjunction with his Application for a

Prejudgment Remedy ("PJR").  *See* Doc. 41.   Plaintiff moved for a PJR based on the claim that

"there is probable cause to believe that a judgment . . . . will enter against Defendants on

Plaintiff's veil-piercing claims."  Doc. 41-1 at 2.   Plaintiff was prompted to seek the TRO by a

concern that the Defendants would dispose of or dissipate assets that would otherwise be

available to satisfy the Judgment, at least in part.   Specifically, Plaintiff claimed:

> Defendants have demonstrated that they have transferred (and will
> continue to transfer) hundreds of thousands of dollars to the
> Yeshiva, [Greer], and [Greer's wife], thereby further depleting any
> amounts that the Plaintiff could recover.  At least in the case of
> [Edgewood Village, Inc.], Defendants have also shown that they
> have engaged (and will engage) in the transfer of their real
> property to further aide in the depletion of their assets. Without an
> injunction limiting these transfers, the Plaintiff likely will be
> forever precluded from recovering the transferred funds, which are
> spent by the Yeshiva and [Greer] as soon as they receive
> incremental transfers from Defendants.

*Id.* at 12-13.   Accordingly, Plaintiff claimed that he would "suffer irreparable injury in the

absence of a temporary restraining order preventing Defendants from transferring their assets."

*Id.* at 12.

The Court granted Plaintiff's request for a TRO on August 25, 2020 because "it appears

that [Plaintiff would] suffer immediate and irreparable injury prior to a hearing on his

Application for Prejudgment Remedy. . . ."  Doc. 43 at 1.   While Plaintiff's request for a PJR

and companion motion for disclosure of Defendants' property were pending, the Parties began a

process of mediation and attempted to agree on "scheduling future briefing and a hearing on the

PJR motion."  Dkt. 45.  This mediation failed, and there has not yet been a final hearing on

Plaintiff's PJR motion.    Accordingly, the TRO remains in effect.   Along with Defendants'

3

Motion for Summary Judgment, Plaintiff's PJR motion, Doc. 41, and his related motion for disclosure of Defendants' property, Doc. 42, are still pending.

In their present Motion to Modify, the Defendants ask the Court to modify the TRO to allow Defendants:

(1) "to pay the most recent legal fees and costs (as well as such fees and costs going forward) incurred by [Greer] and the [Yeshiva] concerning the criminal action against Greer and the civil action in which [Plaintiff] obtained the Judgment against Greer and the Yeshiva, Doc. 69 at 1-2; and

(2) "to provide the necessary funds for the Yeshiva to satisfy the judgment of strict foreclosure rendered in favor of Plaintiff" in Connecticut Superior Court, *id.* at 2.

Mirlis, the Plaintiff in this action against these Defendants, and an unsatisfied Judgment creditor against non-Parties Greer and the Yeshiva, objects to these requested TRO modifications on the grounds that they reflect Greer's determination to "pay all of his various lawyers in their individual and representative capacities and shield the Yeshiva property from collection," while continuing "to flaunt the import, effect and meaning of the underlying [Judgment]." Doc. 71 at 3. In Mirlis's perception, "[Greer] knows that using all of the Defendants' available cash will cause their real properties to fall into disrepair, and lose value, but that is apparently what he wants and is exactly what the TRO is intended to prevent." *Id.* at 3-4. It follows, Mirlis concludes, that the requested TRO modifications should be denied.

At the outset, it should be noted that the issues presented by Defendants' resisted Motion to Modify would be mooted if Defendants succeed on their pending Motion for Summary Judgment. If granted, Defendants' Motion for Summary Judgment would result in a dismissal of the two veil piercing claims asserted in Plaintiff's Complaint. Doc. 51 at 1. If Plaintiff

succeeds on either of these alternative claims for relief against the Defendants, the particular amount of each individual Defendant's assets that must be surrendered to Plaintiff could be the subject of further litigation.  If, on the other hand, Plaintiff's claims for relief are dismissed on summary judgment, those issues do not arise.  Defendants would owe Plaintiff nothing, and there would be no quantum to calculate, at least by this Court in this action.  Accordingly, Plaintiff's pending application for PJR, which he filed in conjunction with his TRO request, would also be mooted.

Plaintiff survived Defendants' motion to dismiss his Complaint.  Moreover, Plaintiff's application for PJR, Plaintiff's motion for disclosure of Defendants' property, and Defendants' Motion for Summary Judgment are *sub judice*.  In the present posture of the case, Plaintiff is entitled to the continued protection the TRO gives him on his claims against these Defendants.  I consider whether Defendants are entitled to the modifications in the TRO that they request in this motion.

B. Proposed TRO Modifications Allowing Defendants to Pay Legal Fees and Costs Incurred by Greer and the Yeshiva

On this Motion to Modify, I am first asked to allow Defendants to pay a number of attorneys' fees and costs, presently accrued or to be charged as a result of future litigation. These fees are generated by legal services rendered to non-Parties Greer and the Yeshiva, during the protracted civil and criminal litigation involving Greer's abuse of Plaintiff.  Pursuant to the Court's October 18, 2021 Order requiring an accounting of these fees, Defendants submitted Affidavits, Doc. 78, which set forth the specific amounts presently owed for legal services well as approximations of such fees and costs going forward, where relevant.[1]

---

[1]      The Affidavits are discussed in greater detail in the context of Defendants' Motion to Seal.  *See* Section II *infra*.

I learn without surprise from the Affidavits and Defendants' motion papers that Greer and the Yeshiva presently owe several attorneys a total sum of hundreds of thousands of dollars for those services.   Defendants also represent that certain attorneys continue to litigate in related matters on behalf of Greer.   *See, e.g.*, Doc. 69 at 4, n. 3 (discussing a "recently filed" Motion for Relief from Final Judgment in the underlying civil matter related to Greer's sexual abuse of Plaintiff); Doc. 76 at 2, n. 3 (noting that, "on November 15, Greer, through his long-standing counsel, Carmody Torrance Sandak & Hennessey LLP[,] filed a Petition for New Trial in the case of *State of Connecticut v. Daniel Greer* (New Action Docket No. NNH-CV-21-6119016-5) (J.D. of New Haven); (Prior Action Docket No. NNH-CRL7-0177934-T (J.D. of New Haven)"). To the extent that Greer and the Yeshiva intend to pursue additional litigation, Defendants' proposed modification would also cover the resulting future fees with no limit on the amounts that may be paid.

Allowing Defendants to substantially reduce their assets by paying considerable, and potentially unlimited, sums to attorneys on behalf of Greer and the Yeshiva contradicts the purpose of the TRO.   Accordingly, Defendants' request to relax the strictures of the TRO to allow for these payments is denied.   Specifically, the TRO is meant to prevent Defendants from transferring or encumbering their personal or real property (1) for the benefit of non-Party Yeshiva, non-Party Greer and related non-Parties; and (2) in a way that significantly reduces Plaintiff's ability to recover the underlying Judgment against Greer and the Yeshiva.   Paying legal fees and costs on behalf of Greer and the Yeshiva benefits these non-Parties.   The magnitude and potentially unlimited nature of these fees, in addition to the fact that Plaintiff is not the ultimate recipient of these fees, could meaningfully diminish Plaintiff's ability to recover the underlying Judgment.

Defendants claim that Defendant Edgewood Elm Housing, Inc. ("Edgewood Elm") is required, under the terms of its by-laws, to pay the legal fees incurred by Greer, its president, in the civil and criminal matters. *See* Doc. 69 at 7-8. Plaintiff objects that Edgewood Elm is judicially estopped from indemnifying Greer and argues that the law does not require a corporation to indemnify its officers and directors for acts that are undertaken for their personal benefit. *See* Doc. 71 at 4-6. Defendants dispute that the doctrine of judicial estoppel applies to prohibit Greer's indemnification and argue that indemnification is appropriate under applicable Connecticut law. *See* Doc. 76 at 5-10. Since the cases generating the attorneys' fees at issue relate to Greer's personal, reprehensible abuse of a child entrusted to his care, significant questions are presented as to whether Edgewood Elm is required to indemnify Greer. Comparable questions arise with respect to the Yeshiva, the second Judgment debtor, which has also incurred legal expenses related to Greer's conduct. Defendants say they are obligated to defray these expenses because "the non-profit Defendants were each established for the very purpose of financially supporting the Yeshiva through rental income" donated by Defendants F.O.H., Inc., Edgewood Village, Inc., Edgewood Corners, Inc., and Yedidei Hagan, Inc. Doc. 76 at 11. Plaintiff disputes that the Defendants were established for that purpose. *See* Doc. 71 at 7. Plaintiff further argues that, even if the Defendants were established to financially support the Yeshiva, "they could not have been established to support the Yeshiva in every endeavor, including avoiding judgments obtained by victims of sexual abuse during their time attending the Yeshiva."[2] *Id.* at 8.

I do not resolve those questions in the context of Defendants' first proposed modification at this time. These questions may have to be considered if Plaintiff establishes Defendants'

---

[2]     The Parties arguments related to Defendants' purpose are considered in more detail in the context of Defendants' second proposed modification to the TRO. *See* Section I.C *infra*.

liability for the unpaid Judgment against Greer and the Yeshiva, so that the amount of each Defendant's required payment on the Judgment must be calculated.   For example, in such circumstances, the Court may need to decide if Edgewood Elm's indebtedness on the Judgment trumps any obligation pay Greer's legal expenses.   What is presently apparent is that it would be inappropriate at this time to allow payments by these Defendants of considerable sums, without recourse, to attorneys who rendered services to non-Parties who have failed to pay Plaintiff's Judgment against them.

Finally, Plaintiff's request for a TRO was based, in part, on a concern that the Yeshiva and Greer would reduce Plaintiff's potential recovery by immediately spending funds transferred from the Defendants.   *See* Doc. 41 at 13.   Apparently trying to assuage this concern, Defendants emphasize that they "would pay such amounts directly to counsel" *on behalf of* non-Parties Greer and the Yeshiva but not *through* these non-Parties.   *See* Doc. 69 at 7, 9. However, no matter how Defendants make the proposed payments, these payments will *benefit* non-Parties Greer and the Yeshiva to the detriment of Plaintiff's ability to recover the underlying Judgment.   Because this is precisely what the TRO is meant to prevent, Defendants' first requested modification to the TRO will not be allowed.

C.   Proposed TRO Modification Allowing Defendants to Prevent Foreclosure of the Yeshiva

The second request in Defendants' Motion to Modify asks me to allow Defendants to provide funds for the Yeshiva to satisfy the judgment of strict foreclosure rendered in favor of Plaintiff in *Mirlis v. Yeshiva of New Haven, Inc.*, Docket No. NNH-CV-17-6072389-S (the "Foreclosure Action").   Defendants urge the Court to authorize such a transfer "before the

historic school building is foreclosed, and a pillar of New Haven's Jewish community is gone." Doc. 69 at 2.   Plaintiff objects to this second proposed modification.

To evaluate Defendants' request, I begin with a summary of the Foreclosure Action, which is currently pending before Judge Cirello of the Connecticut Superior Court.   The only Plaintiff in the Foreclosure Action is Mirlis, who is also the only Plaintiff in the present action pending before this Court.   The only Defendant in the Foreclosure Action is the Yeshiva.   As discussed *supra*, the Yeshiva is not a Party to the present action.   Regarding the Foreclosure Action, Mirlis represents that, "[s]ince July 2017, [he] has been seeking to foreclose a judgment lien on the Yeshiva's real property in New Haven . . . based on the underlying [J]udgment entered against [Greer] and the [Yeshiva] by the Hon. Michael Shea."   Doc. 92 at 2. Defendants in the present action do not dispute that, in the Foreclosure Action, Mirlis obtained a judgment of strict foreclosure against "the real property located at 765 Elm Street, New Haven, *i.e.* the location of the historic Yeshiva school building."   Doc. 69 at 2.   The Court refers to the real property against which Plaintiff obtained a judgment lien as the "Yeshiva Property." Defendants further represent that "[t]he judgment of strict foreclosure was affirmed on appeal earlier this year*, see Mirlis v. Yeshiva of New Haven, Inc.*, 205 Conn. App. 206 (2021), and a petition for certification to appeal to the Connecticut Supreme Court was recently denied."   *Id.*

On September 24, 2021, the Yeshiva filed a motion in the Foreclosure Action apparently seeking, in part, to substitute a cash bond for the judgment lien.   *See* Foreclosure Action, at D.I. 147.00.   In this motion, the Yeshiva references the Defendants' Motion to Modify in the present action and claims that "[i]f granted, the Yeshiva will have sufficient funds to substitute a bond" for the judgment.   *Id.* at ¶ 4.   In the Foreclosure Action motion, the Yeshiva also opposed Mirlis's separate Motion to Reset Law Day After Appeal, which requested that Judge Cirello

"enter the shortest possible law day."  *Id.*, at D.I. 146.00, ¶ 12.   The Yeshiva, by contrast, urged

that that Judge Cirello should "stay proceedings pending adjudication" of certain outstanding

motions or, alternatively "set an extended law day so that the Yeshiva has sufficient time to

adjudicate the [Motion to Modify]."  *Id.*, at D.I. 147.00, ¶ 9.   Judge Cirello has set the new law

day at January 31, 2022.[3]  *See id.*, at D.I. 152.00; D.I. 146.20.   However, Judge Cirello has not

yet ruled on the Yeshiva's motion to substitute.

      Given this background, I now turn to the claims underpinning Defendants' Motion to

Modify in the present action and identify the issues I do not resolve.[4]   First, the Parties to the

present action dispute whether the Yeshiva has any right to substitute a bond in lieu of Plaintiff's

judgment lien.  *See, e.g.*, Doc. 91 at 2-4; Doc. 92 at 2-4.   In this context, Plaintiff claims that

Judge Cirello, "to the extent he could have even granted it, denied the motion to substitute bond

in lieu *de facto* by re-entering Judgment of Strict Foreclosure."   Doc. 92 at 4.   Defendants

counter by stating that the docket for the Foreclosure Action "contains no ruling on the motion to

substitute a bond."   Doc. 91 at 2.   Moreover:

>       [This] makes perfect sense because Judge Cirello entered *extended
> law days* over Plaintiff's insistence for immediate law days to

---

[3]      January 20, 2022, I note that the Yeshiva has motioned the Connecticut Superior Court to
"(1) reopen the judgment of strict foreclosure for the purpose of extending the law day (presently
January 31, 2022) for ninety (90) days to May 2, 2022 and (2) to permit the Yeshiva to substitute
a bond in lieu of the judgment lien . . . ."   Foreclosure Action, at D.I. 153.00, 1.  Plaintiff
Mirlis objects to the Yeshiva's motion to reopen judgment for purposes of extending the law day
and to substitute bond.  *Id.*, at D.I. 156.00, 1.  Judge Cirello granted the Yeshiva's request to
"[w]rite on" the Yeshiva's "Motion to Open Judgment & Extend Law Day & Substitute Bond"
for hearing to be argued on January 24, 2022.  *See id.*, at D.I. 155.10 (apparently granting the
Yeshiva's request for a hearing).

[4]      In addition to the two issues discussed in this paragraph, the Court also does not address
Defendants' proposal to "*purchase* the Yeshiva building for the fair-market value found by the
Court in the [Foreclosure Action]."  Doc. 76 at 3.   This idea, (1) which Defendants apparently
mention for the first time as an alternative to funding the Yeshiva's satisfaction of the
Foreclosure Action lien and (2) which Plaintiff does not accept, falls outside the scope of this
Ruling.

> allowing time for the Motion to Modify to be adjudicated.   The
> issue of whether a bond or cash can be substituted for the judgment
> lien was not ripe at that time, and the court well-knew this because
> the Yeshiva's ability to post a bond or cash to avoid the foreclosure
> is obviously dependent on the outcome of the Motion to Modify.

*Id.* (footnote omitted).   Second, the Court notes that the motion papers in the present action do

not specifically identify what exactly Defendants propose to substitute for Plaintiff's judgment

lien against the Yeshiva Property.   The Parties to the present action reference a cash payment of

$620,000 to be posted in lieu of the judgment lien.   *See, e.g.*, Doc. 76 at 3; Doc. 92 at 5.

Defendants represent that this is the "court ordered fair market value" of the Yeshiva Property.

Doc. 76 at 3.   However, Plaintiff implies that this is a "well-below market valuation set by the

[Connecticut Superior Court] based on two-year old appraisals."   Doc. 92 at 5.   Defendants also

argue in their most recent brief to this Court that:

> There is absolutely no harm to Plaintiff for the foreclosure court to
> discharge the judgment lien, any time before the law days run,
> provided the court conducts a hearing and determines that the bond
> or cash offered by the Yeshiva is equal to or of greater value
> thanthe judgment lien on the Yeshiva building. The point of the
> foreclosure action is **not to punish** the Yeshiva by forcing the
> taking of its cherished, historical school building where the
> Plaintiff can be made whole through a statutorily permitted bond,
> property or cash substitute.

Doc. 91 at 4.   This excerpt apparently contemplates that, instead of substituting cash, the

Yeshiva is also entitled to other substitutions – such as property – which the Connecticut

Superior Court determines are equal to or of greater value than the judgment lien.   I do not rule

on (1) whether the Yeshiva has the right to make a substitution in the Foreclosure Action; (2) the

form of any such substitution; (3) the cash value, if applicable, of any such substitution; or (4)

any related questions. These issues are suited for the Connecticut Superior Court, to which this

Ruling is referred with collegial compliments.

11

Setting these issues aside, I determine that the question this welter of circumstances comes down to for the purposes of evaluating Defendants' second proposed modification is as follows.  If (1) the Yeshiva has the right to make a substitution for Mirlis's judgment lien in the Foreclosure Action and (2) the Connecticut Superior Court authorizes an appropriate substitute in its discretion, would allowing Defendants to transfer funds[5] to the Yeshiva to satisfy the judgment lien violate the purpose of the TRO in this case? I conclude that this question should be answered in the negative.

Mirlis's Foreclosure Action was not an element in his motion for a TRO.  Instead, as discussed *supra*, the TRO is meant to prevent Defendants from transferring or encumbering their personal or real property (1) for the benefit of the Yeshiva, Greer and related non-Parties; and (2) in a way that significantly reduces Plaintiff's ability to recover the underlying Judgment against Greer and the Yeshiva.  Defendants state that they "they may need to sell one of their properties," presumably to obtain funds, which they will transfer to the Yeshiva "to satisfy the judgment of strict foreclosure."  Doc. 76 at 4.  Although transferring funds from Defendants such that the Yeshiva can "[keep] its school building and [continue] to operate," certainly benefits the Yeshiva, it does not significantly reduce Plaintiff Mirlis's ability to recover the underlying Judgment.  Doc. 69 at 11.  Mirlis is also the Plaintiff in the Foreclosure Action against the Yeshiva.  Accordingly, unlike Defendants' proposal to pay the Yeshiva's lawyers, Mirlis himself would be the ultimate recipient of any funds authorized by the Connecticut Superior Court in lieu of his judgment lien.  Moreover, as Mirlis states, the Foreclosure Action is "based on the underlying judgment entered against [Greer] and the Yeshiva by the Hon.

---

[5]     As discussed *supra*, it is unclear what exactly Defendants propose to substitute for Plaintiff's judgment lien against the Yeshiva Property, and the Court does not rule on the form of any such substitution.   For ease of reference, the Court will refer to the proposed substitution as "funds" in line with Defendants' original request in their Motion to Modify.   *See* Doc. 69 at 2.

Michael Shea." Doc. 92 at 2. Therefore, the concern underpinning the TRO – that Defendants will place their assets beyond Mirlis's reach and reduce his ability to recover the Judgment – is not implicated by Defendants' second proposed modification.

The crux of Mirlis's objection to Defendants' second proposed modification is that a substitution of funds for his judgment lien in the Foreclosure Action could amount to a "substantial amount of money for [the non-profit Defendants] that generate revenue via the rental of affordable housing, and through grants which, as a result of [Greer's] abuse of Mr. Mirlis, have substantially dried up." Doc. 71 at 2. Plaintiff argues that, using Defendants' limited assets "for the benefit of" the Yeshiva "will cause maintenance [of the rental properties] to be neglected or deferred, reducing the potential value of the assets that could be available to Mr. Mirlis to recover, thereby prejudicing his chances at any meaningful recovery on the [Judgment]." *Id.* at 3. However, as discussed *supra*, Mirlis himself would receive any authorized substitution for his judgment lien, which he obtained based on the underlying Judgment. Therefore, the Court cannot determine that Defendants' proposed modification would siphon money away from Mirlis or frustrate his efforts to enforce his Judgment against the Yeshiva.

I further note the Parties also disagree in the context of Defendants' second proposed modification about the whether the primary purpose of the Defendants is to support the Yeshiva. Specifically, Plaintiff argues that the Defendants were not established to support the Yeshiva. Doc. 71 at 7. Instead, Plaintiff claims, all Defendants other than Yedidei Hagan, Inc. "were established to own and maintain rental housing in the Edgewood Park neighborhood of New Haven and would donate 'some of the profits to financially support the Yeshiva.'" *Id.* (quoting Doc. 53 at ¶ 21). In support of this claim, Plaintiff cites to Greer's affidavit, which Defendants

filed in support of their Motion for Summary Judgment.   Plaintiff also argued that Greer dominated and controlled Defendants based in part on his claim that Defendants alleged purpose was to maintain the low-income rental properties they own.   *Id.* at 8.   By contrast, Defendants argue that they were "each established for the very purpose of financially supporting the Yeshiva through rental income . . . .   Doc. 76 at 11.   Defendants also state that Plaintiff's contrary assertions "are contradicted by extensive documentary and testimonial evidence put forth by the Defendants in support of their [Motion for Summary Judgment] as well as this Court's acceptance of the accuracy of that clear background information."   *Id.*   The Court need not resolve this disagreement to decide Defendants' Motion to Modify, and the underlying questions are better addressed, if necessary, in the context of Defendants' Motion for Summary Judgment. Therefore, nothing in this Ruling expresses or intimates any present view on the part of the Court regarding the merits of any claim underlying the Parties' disagreement in this context.

In these circumstances, I need not "modify" the TRO to "allow" the Defendants to take the proposed action with respect to Foreclosure Action.   The more appropriate course for me to take is to *clarify* the TRO by stating, as I do, that I would not regard Defendants' transfer of funds to the Yeshiva to satisfy the judgment lien as a violation of the TRO the Court entered in the present case.

A district judge who enters and maintains a TRO is acting as a chancellor in equity. That requires, in any case, the balancing of the parties' legitimate interests.   In the case at bar, Plaintiff has an interest in preventing the Defendant companies from disposing of their assets in such a manner that those assets are not available to satisfy Mirlis's Judgment against Greer and the Yeshiva, for which Mirlis alleges the Defendants are liable on reverse veil piercing theories (disputed by Defendants).   The Court granted Plaintiff a TRO in this case to protect that interest.

Mirlis also commenced in Connecticut Superior Court the Foreclosure Action, in order to achieve a partial satisfaction of his Judgment.   In that context, the Defendants profess an interest in using their funds in such a way that Mirlis's judgment lien against the building is satisfied and the Yeshiva retains possession of the Yeshiva Property.   That resolution does not violate the TRO, since the funds in question would not be dissipated in order to defeat a potential veil-piercing judgment against Defendants; rather, as a result of the contemplated Connecticut Superior Court judgment in the foreclosure action, those funds would pass to Mirlis, in direct partial satisfaction of his Judgment.   The TRO is not implicated in such a resolution in the Foreclosure Action.

If the Yeshiva uses the transferred funds for a purpose *other than* to satisfy Mirlis's judgment lien, this *would* violate the purpose of the TRO by reducing Plaintiff's ability to recover the underlying Judgment Plaintiff obtained.   It would also violate the purpose of the TRO if Defendants reduce their assets for a purpose other than to satisfy Mirlis's judgment lien. In that regard, the Court is mindful of Plaintiff's plausible concern, stated in his application for a TRO, that funds transferred by Defendants will be "spent by the Yeshiva and [Greer] as soon as" the transfers are received.   Doc. 41-1 at 13.   The Court is also mindful of Defendants' possible need to "sell one of their properties," presumably to obtain funds for the proposed transfer to the Yeshiva.   Doc. 76 at 4.   Accordingly, the Court ORDERS that Defendants may make the requested transfer if, but only if: (1) the Connecticut Superior Court rules that the Yeshiva has the right to make a substitution in the Foreclosure Action; (2) the transfer is made to the Yeshiva in accordance with the Connecticut Superior Court's instructions regarding the form and preservation of any such substitution; (3) if Defendants must transfer assets to obtain the substitution (for example, the sale of property for funds to substitute for the judgment lien), they

must do so only to the extent necessary to obtain the substitution; and (4) the effect of a substitution, followed by a final judgment in Plaintiff's favor in the Foreclosure Action, will be immediate partial satisfaction of Plaintiff's judgment against the Yeshiva, in the amount determined by the Connecticut Superior Court in the Foreclosure Action.

Finally, if the Connecticut Superior Court authorizes the Yeshiva to substitute cash for the judgment lien in the Foreclosure Action, Defendants must transfer funds to the Yeshiva only in the precise amount the Connecticut Superior Court authorizes.

This is the resolution in the Foreclosure Action that the record on the present motion contemplates.   For the reasons stated *supra*, Defendants' Motion to Modify the TRO [Doc. 69] is DENIED.   To the extent that the Motion to Modify asks that the TRO be clarified, this request is GRANTED, and the TRO is clarified in the manner set forth in this Ruling.

## II.   DEFENDANTS' MOTION TO SEAL

In an opposed motion, Defendants request to file under seal four Affidavits, Doc. 78, concerning legal fees incurred by Greer and the Yeshiva.  *See* Doc. 77.  As discussed *supra*, Defendants filed the Affidavits pursuant to the Court's October 18, 2021 Order, Dkt. 72, directing them to provide a suitable accounting of the attorneys' fees and expenses relevant to the Motion to Modify.  *Id.* at 1.  Each Affidavit is submitted by an attorney who works for a law firm that has provided legal services to Greer and/or the Yeshiva.  *See* Doc. 78.  Moreover, each Affidavit discusses, *inter alia*, (1) the nature of the work performed on behalf of Greer and/or the Yeshiva; and (2) the attorneys' fees presently owed for legal services (along with estimations of fees which will possibly be incurred in the future, where applicable).  *Id.* Certain Affidavits discuss billing rates and/or the number of hours billed.  *See, e.g.*, Doc. 78 at 8, 13, 16.   Some Affidavits also reference the fees attorneys have already received on behalf of

Greer and the Yeshiva. *See, e.g.*, Doc. 78 at 12, 16. Based on the following analysis, Defendants' motion to seal the Affidavits is DENIED.

Defendants argue that the Affidavits should be sealed in their entirety "[b]ecause legal fees and expenses are sensitive financial matters" and because the Affidavits "will surely be reported on by certain news outlets showing a clear bias against Greer and the Yeshiva." Doc. 77 at ¶ 3. Defendants further claim that sealing the Affidavits will discourage "unreasonable publicity regarding the legal fees" and that "the public has no compelling interest in knowing" what Greer or the Yeshiva "have partially spent on legal fees defending themselves." *Id.*

Plaintiff opposes Defendants' motion to seal. He claims that Defendants fail to make a particularized showing regarding "what it is they consider to be the sensitive financial matters" in the Affidavits and emphasize that the Affidavits do not contain "trade secrets or generally [unknown] and valuable business information." Doc. 79 at 1-2. Moreover, "if keeping [documents like the Affidavits] from the press because [they] might be biased against a party was a legitimate basis to file under seal[,] nearly every document filed in any case with even a modicum of media attention would be subject to being filed under seal and the public would no longer have access to the courts." *Id.* at 2. Here, Plaintiff claims that the "public absolutely has a right and a need to know" how Defendants are proposing to spend their funds, since Defendants are non-profit entities that solicit and have received funds "through public or quasi-public sources." *Id.* Defendants respond by accusing Plaintiff of "feign[ing] concern about public donations" and argue Plaintiff is "actually driven by his self-serving desire" to continue helping a biased news entity which publishes its "judgment, despite having no evidence or trial on the matter." Doc. 84 at 1.

"Under both the common law and the First Amendment, there is a strong, long-established presumption of public access to judicial documents . . . ." *Sardarian v. Fed. Emergency Mgmt. Agency*, No. 3:19-CV-910 (CSH), 2019 WL 8331444, at *1 (D. Conn. Sept. 16, 2019); *accord Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-120 (2d Cir. 2006). This District's Local Rules of Civil Procedure further provide:

> Every document used by parties moving for or opposing an adjudication by the Court, other than trial or hearing exhibits, shall be filed with the Court. No judicial document shall be filed under seal, except upon entry of an order of the Court acting *sua sponte* or specifically granting a request to seal that document. Any such order sealing a judicial document shall include particularized findings demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored to serve those reasons.

D. Conn. L. Civ. R. 5(e)3.

The Second Circuit has articulated a three-step analysis for determining whether documents filed in a civil case must be available to the public. First, the Court must determine whether the documents at issue are "judicial documents," which are "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch*, 435 F.3d at 119. *See also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978); *Matter of New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987), *cert. denied*, 485 U.S. 977 (1988). Second, the Court must determine the weight of the presumption to be applied, which varies based on:

> [T]he role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.

*U.S. v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995); *accord Lugosch*, 435 F.3d at 119. Third, the Court balances the asserted need for sealing against the right of public access. *See Amodeo*

71 F. 3d at 1050; *accord Lugosch*, 435 F.3d at 120.  I will apply this three-step analysis to Defendants' motion to seal.

A.  <u>Judicial Documents</u>

First, the Affidavits are, generally speaking, "judicial documents," to which the presumption of public access applies.  Because the Affidavits discuss the legal fees owed by Greer and the Yeshiva, these documents bear directly on the Court's adjudication of Defendants' Motion to Modify such that Defendants may pay these fees.   Indeed, Defendants submitted the Affidavits "[c]onsistent with" the Court's October 18, 2021 Order, Dkt. 72, which directed Defendants to provide the Court with an accounting of the relevant attorneys' fees and expenses. Doc. 77 at ¶ 2.   Accordingly, the Affidavits are "relevant to the judicial function" and "useful in the judicial process."  *Lugosch*, 435 F.3d at 119.   Therefore, I must weigh the presumption of access against Defendants' countervailing concerns.

B.  <u>Weight of the Presumption to be Applied</u>

My next consideration is the weight of the presumption to be applied.  In this case, because the Affidavits were "filed as part of a motion made by [a party] seeking action by the court, the presumption of public access is strong."  *United States Sec. & Exch. Comm'n v. Ahmed*, No. 3:15CV675(JBA), 2017 WL 5515907, at *1 (D. Conn. Sept. 19, 2017).   The Affidavits also "go to the heart of the dispute to be decided by the Court," which further supports the conclusion that "[t]he presumption of access is . . . strong[.]" *MacroMavens, LLC v. Deutsche Bank Sec., Inc*., No. 09CV7819(PKC), 2011 WL 1796138, at *2 (S.D.N.Y. Apr. 27, 2011).

Defendants claim that the Affidavits "will surely be reported on by certain news outlets showing a clear bias against Greer and the Yeshiva."   Doc. 77 at ¶ 3.  They also state that the

publication of what Greer and the Yeshiva spend on legal fees "will be done . . . for the clear purpose of prejudicing the Defendants in the public and consequently in this action."   Doc. 84 at 1.   In the context of this latter statement, Defendants reference three "bias[ed]" articles attached to Plaintiff's opposition to Defendants' Motion to Modify.   Doc. 84 at 1.   These articles, submitted as Exhibits B, C, and D of Plaintiff's opposition and apparently published by the *New Haven Independent*, are entitled, respectively, "Subsidy OK'd For Sex Predator's Companies," "State Bars Subsidies For Greer's Companies," and "Decline at Greer's Edgewood 'Village'?" Defendants further allege that Plaintiff's "purported concern about the Court's openness" is instead motivated by his desire to help this "bias[ed] news entity."   *Id.*

Defendants offer no compelling evidence of Plaintiff's alleged motivation to help the *New Haven Independent* ruin the reputations of Greer and the Yeshiva.   Noting that Plaintiff included articles published by the *New Haven Independent* in his opposition to Defendants' Motion to Modify is insufficient to establish this purpose.   Similarly, Defendants do not point to specific evidence underlying their claims that the *New Haven Independent* is motivated by a bias against Greer and the Yeshiva.   Conclusory statements about "a clear bias against Greer and the Yeshiva," Doc. 77 at ¶ 3, and references to "a simple reading of those bias[ed] articles," Doc. 84 at 1, are unpersuasive.

However, even if I accepted Defendants' allegations, this would not diminish the strong presumption of public access that attaches to the Affidavits.   As the Second Circuit has explained:

> Although the presumption of access is based on the need for the
> public monitoring of federal courts, those who seek access to
> particular information may want it for entirely different reasons.
> However, we believe motive generally to be irrelevant to defining
> the weight accorded the presumption of access. It is true that
> journalists may seek access to judicial documents for reasons

> unrelated to the monitoring of Article III functions. Nevertheless, assessing the motives of journalists risks self-serving judicial decisions tipping in favor of secrecy. Where access is for the purpose of reporting news, moreover, those interested in monitoring the courts may well learn of, and use, the information whatever the motive of the reporting journalist.[6]

*Amodeo*, 71 F.3d at 1050; *accord Lugosch*, 435 F.3d at 123 (finding, when certain newspapers sought access to documents filed under seal in connection with a pending motion, that "what the [n]ewspapers seek to do with the documents has no effect on our consideration.").

C. The Need for Sealing Versus the Right of Public Access

Finally, I balance the asserted need for sealing against the strong right of public access. "[D]ocuments may be sealed if 'specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Matter of New York Times Co.,* 828 F.2d at 116 (quoting *Press-Enter. Co. v. Superior Ct. of California for Riverside Cty.*, 478 U.S. 1, 13-14 (1986)).   "Broad and general findings by the trial court, however, are not sufficient to justify closure."  *Id; accord* D. Conn. L. Civ. R. 5(e)3 ("Any . . . order sealing a judicial document shall include particularized findings demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored to serve those reasons.").   Thus, "a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need."  *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994). *See also Sec. & Exch. Comm'n v. The Street.com*, 273 F.3d 222, 232 (2d Cir. 2001).

---

[6]      The Second Circuit continues that "[d]ifferent considerations apply where personal motives, such as an individual vendetta or a quest for competitive economic advantage, are involved."  *Amodeo* 71 F. 3d at 1050.   However, as discussed *supra*, Defendants offer no persuasive evidence of any specific vendetta harbored by Plaintiff or the *New Haven Independent* against the Defendants.   Accordingly, allegations concerning their motivations are irrelevant to the Court's analysis.

The party who requests sealing bears the burden of demonstrating the grounds to seal. *See, e.g.*, *DiRussa v. Dean Witter Reynolds Inc*., 121 F.3d 818, 826 (2d Cir. 1997). "Thus, for each particular document, or designated portion of the document, the movant must establish that a specific prejudice or harm will result if there is no sealing." *Sardarian*, 2019 WL 8331444, at *2.  Moreover, redactions, as opposed to sealing entire documents, are favored in that they are limited and clear in scope. *See, e.g.*, *Suntoke v. PSEG Power Connecticut, LLC*, No. CIVA, 3:06-CV-01520 (JCH), 2007 WL 1455847, at *1 (D. Conn. May 16, 2007) ("A blanket sealing order . . . would rarely, if ever, be appropriate.").

Here, Defendants make the disfavored request to seal the Affidavits in their entirety. However, their arguments focus predominantly on preventing public dissemination of (1) the amount of legal fees and expenses owed by Greer and the Yeshiva and (2) "what Greer and the Yeshiva have partially spent on legal fees defending themselves."  Doc. 77 at ¶ 3; *see also* Doc. 84 at 1 ("[W]hat a person or a party spends on legal fees is indeed protectable, sensitive financial information . . .").  Yet, in addition to identifying specific amounts of legal fees, the Affidavits also discuss, *inter alia*, the work performed by various law firms, the matters on which certain attorneys represented Greer and the Yeshiva, billing rates, and hours billed.  Defendants do not provide specific, particularized arguments to support sealing these portions of the Affidavits. Defendants have accordingly failed their burden to demonstrate grounds to seal the Affidavits in their entirety.  Therefore, their request for a blanket sealing order must be denied.

Moreover, even if I construe Defendants' motion as a more limited request to redact portions of the Affidavits discussing specific amounts of legal fees, this request must also be denied.  Specifically, Defendants' claim that "legal fees and expenses are sensitive financial matters" is insufficient to negate the strong presumption of public access to this information.

Doc. 77 at ¶ 3. Indeed, courts have routinely found that "the strong presumption of public access outweighs the countervailing need to maintain [a] total amount of claimed fees and costs under seal." *Vineyard Vines, LLC v. MacBeth Collection, L.L.C.*, No. 3:14CV01096(SALM), 2019 WL 12024583, at *4 (D. Conn. Apr. 1, 2019); *accord Excellent Home Care Servs., LLC v. FGA, Inc.*, No. 13CV5390(ILG)(CLP), 2017 WL 4838306, at *7 (E.D.N.Y. Oct. 24, 2017) ("Balancing the fact that [defendant's] billing entries are already redacted so as to not reveal any potentially privileged communications, with the public's right of access to information, the Court denies [defendant's] request to file its billing records and attorney affidavits under seal."); *Kryptek Outdoor Grp., LLC v. Salt Armour, Inc.*, No. 1:15CV348(RC), 2016 WL 7785854, at *2 (E.D. Tex. Feb. 22, 2016) (The "public's common law right of access to judicial records outweighs [plaintiff's] interest in non-disclosure[ ]" of exhibit plaintiff determined to include "sensitive and confidential financial information of [p]laintiff and its counsel regarding attorney's fees incurred in this action[.]"); *Mitchell by & Through Hughes v. Mirza*, No. 07-CV-03686 (ILG), 2009 WL 10706571, at *2 (E.D.N.Y. May 6, 2009) (denying motion to seal financial affidavit submitted on motion for appointment of counsel where movant's "request to seal his affidavit [was] motivated by his desire to keep his financial affairs private" and "[h]is financial affairs . . . undermined his qualification for the appointment of counsel," which "was the issue before the court").

Finally, "[r]edacting the total amount of fees and costs claimed would implicate serious public policy concerns." *Vineyard Vines, LLC*, 2019 WL 12024583, at *4. "[P]ublic confidence in our judicial system cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." *Id.* (quoting *Procaps S.A. v.*

*Patheon Inc.*, No. 12-24356-CIV, 2013 WL 5928586, at *5 (S.D. Fla. Nov. 1, 2013)); *see also*

*Brown & Williamson Tobacco v. Fed. Trade Comm'n*, 710 F.2d 1165, 1180 (6th Cir.1983)

("[T]he natural desire of parties to shield prejudicial information contained in judicial records

from competitors and the public . . . cannot be accommodated by courts without seriously

undermining the tradition of an open judicial system. Indeed, common sense tells us that the

greater the motivation [an entity] has to shield its operations, the greater the public's need to

know.").

Based on these public policy concerns, Defendants' conclusory claim that "the public has

no compelling interest in knowing what [Greer or the Yeshiva] have partially spent on legal fees

defending themselves" is unpersuasive.   Doc. 77 at ¶ 3.   On the contrary, "[a]ny step that

withdraws an element of the judicial process from public view makes the ensuing decision look

more like fiat and requires rigorous justification."   *United States v. Aref*, 533 F.3d 72, 83 (2d

Cir. 2008).   Defendants have failed to provide a justification overcoming the strong presumption

of public access to the Affidavits.   Accordingly, their request to seal these judicial documents is

DENIED.

### III.   CONCLUSION

1. Defendants' Motion to Modify the TRO, Doc. 69, is DENIED.   To the extent that the

   Motion to Modify asks that the TRO be clarified, this request is GRANTED, and the

   TRO is clarified in the manner set forth in this Ruling.

2. Defendants' Motion to Seal, Doc. 77, is DENIED.   Therefore, the clerk is directed to

   unseal the Affidavits, Doc. 78.

   It is SO ORDERED.

Dated:   New Haven, Connecticut
        January 21, 2022

                                          */s/ Charles S. Haight, Jr.*
                                          CHARLES S. HAIGHT, JR.
                                          Senior United States District Judge