## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ELIYAHU MIRLIS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:19-cv-700 (CSH) |
| | ) | |
| v. | ) | |
| | ) | |
| EDGEWOOD ELM HOUSING, INC., | ) | |
| F.O.H., INC., EDGEWOOD VILLAGE, INC., | ) | **FEBRUARY 21, 2022** |
| EDGEWOOD CORNERS, INC., and | ) | |
| YEDIDEI HAGAN, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION [DOC. 99]

**HAIGHT, Senior District Judge:**

This diversity case arises out of an earlier, underlying action brought by Plaintiff, Eliyahu Mirlis ("Plaintiff" or "Mirlis"), against non-Parties Daniel Greer ("Greer") and the Yeshiva of New Haven, Inc. (the "Yeshiva"), wherein Mirlis alleged Greer subjected him to sexual abuse while Mirlis was a student at the Yeshiva. In this underlying action before Judge Shea, Mirlis obtained a judgment ("Judgment") against Greer and the Yeshiva for compensatory and punitive damages, in the total amount of $21,749,041.10. The Second Circuit affirmed Mirlis's Judgment against Greer and the Yeshiva. *See Mirlis v. Greer*, 952 F.3d 36 (2d Cir. 2020). Mirlis's Judgment remains unpaid, thereby setting the stage for the present action (the "Present Veil Piercing Action"), wherein Mirlis contends that the five captioned Defendants are liable to pay the Judgment under the doctrine of reverse corporate veil piercing.

The five corporate Defendants in the Present Veil Piercing Action currently operate pursuant to a Temporary Restraining Order ("TRO"), Doc. 43, which the Court filed on August

1

25, 2020.  On January 21, 2022, the Court ruled on Defendants' Motion to Modify the Temporary

Restraining Order ("Motion to Modify") after the Parties' failed attempt to resolve the issues

underpinning this motion.   The Court's order on the Motion to Modify, Doc. 98, (1) denied

Defendants' request that they be allowed to pay legal fees and costs incurred by Greer and the

Yeshiva; and (2) clarified the TRO to allow Defendants, subject to certain conditions, to provide

funds[1] for the Yeshiva to satisfy the judgment of strict foreclosure rendered in favor of Plaintiff in

*Mirlis v. Yeshiva of New Haven, Inc.*, Docket No. NNH-CV17-6072389-S (the "Foreclosure

Action").   The Foreclosure Action is currently pending before Judge Cirello of the Connecticut

Superior Court, and this Court refers to the real property against which Plaintiff obtained a

judgment lien as the "Yeshiva Property."[2]

Plaintiff now moves, Doc. 99, under Local Civil Rule 7(c) for reconsideration of the second

Ruling in the Court's order on Defendants' Motion to Modify ("TRO Clarification Ruling").  In

Plaintiff's motion ("Motion for Reconsideration"), Plaintiff claims that permitting Defendants to

provide funds to the Yeshiva to substitute for Plaintiff's existing judgment lien on the Yeshiva

Property "reduces the aggregate available assets against which [Plaintiff] may enforce his

[Judgment]."  Doc. 99-1 at 2.  This result, argues Plaintiff, is unjust because it "is in direct

contradiction to the TRO's Court[-]acknowledged purpose of preventing the 'significant[]

reduc[tion in] Plaintiff's ability to recover the underlying Judgment against Greer and the

---

[1]      It is unclear from Defendants' briefs on their Motion to Modify what exactly they propose to substitute for Plaintiff's judgment lien against the Yeshiva Property, and this Court did not rule on the form of any such substitution.  *See* Doc. 98 at 12 n.5.  In line with this Court's Ruling on Defendants' Motion to Modify, and for ease of reference, this Court will refer to the proposed substitution as "funds" in line with Defendants' original request in their Motion to Modify.  *See* Doc. 69 at 2.

[2]      Defendants describe this property as "the real property located at 765 Elm Street, New Haven, *i.e.* the location of the historic Yeshiva school building."  Doc. 69 at 2.

2

Yeshiva.'" *Id.* at 6 (quoting Doc. 98 at 12).  Defendants represent, pursuant to Local Civil Rule 7(c)2, "that because the issue raised in Plaintiff's Motion for Reconsideration . . . was already carefully considered by the Court . . . they are refraining from responding to the motion 'unless requested by the Court.'"  Doc. 101 at 1.

This Ruling decides Plaintiff's Motion for Reconsideration.  It begins by providing background on the relevant Rulings, cases, and motions.  Section I summarizes the relevant findings in the TRO Clarification Ruling.  Section II describes the proceedings that took place in the Foreclosure Action and the Present Veil Piercing Action after the TRO Clarification Ruling. Section III summarizes and discusses the Motion for Reconsideration.  In Section III, the Court particularly discusses Plaintiff's (1) assertion that Defendants would not ultimately retain title to the Yeshiva Property after transferring funds to the Yeshiva; (2) claim that the resulting reduction in Defendants' assets would culminate in a reduction of the aggregate pool of assets against which Plaintiff could enforce his Judgment; (3) argument that this aggregate reduction contradicts the purpose of the TRO in the Present Veil Piercing Action; and (4) conclusion that the Court committed clear error in its TRO Clarification Ruling.

Next, Section IV states the legal standard governing motions for reconsideration and articulates the Court's two key findings.  The first finding, discussed further in Section V, is that the data Plaintiff submits as part of his Motion for Reconsideration represents new evidence. Therefore, by not considering this data in its TRO Clarification Ruling, the Court did not commit clear error.  The second finding, discussed in Section VI, is that the introduction of this new evidence nonetheless provides a compelling reason to reconsider the TRO Clarification Ruling. Accordingly, Plaintiff's Motion for Reconsideration is GRANTED, and the Court's TRO

3

Clarification Ruling is revised to account for the new evidence.  Finally, the Court summarizes its conclusion in Section VII.

## I.  SUMMARY OF THE JANUARY 21, 2022 TRO CLARIFICATION RULING

The operative TRO in the Present Veil Piercing Action enjoins the five corporate Defendants from "(a) transferring or encumbering any of their personal property, other than to pay any of their employees, with the exception of [Greer], and perform reasonable maintenance on real property they own; or (b) transferring or encumbering any of their real property . . . ."  Doc. 43 at 1-2.  In relevant part, Defendants' Motion to Modify asked the Court to allow Defendants to provide funds for the Yeshiva to satisfy the judgment of strict foreclosure rendered in favor of Plaintiff in the Foreclosure Action.

In the TRO Clarification Ruling, dated January 21, 2022, the Court observed:

> The only Plaintiff in the Foreclosure Action is Mirlis, who is also the only Plaintiff in the present action pending before this Court. The only Defendant in the Foreclosure Action is the Yeshiva.  As discussed *supra*, the Yeshiva is not a Party to the present action. Regarding the Foreclosure Action, Mirlis represents that, "[s]ince July 2017, [he] has been seeking to foreclose a judgment lien on the Yeshiva's real property in New Haven . . . based on the underlying [J]udgment entered against [Greer] and the [Yeshiva] by the Hon. Michael Shea."  Doc. 92 at 2.  Defendants in the present action do not dispute that, in the Foreclosure Action, Mirlis obtained a judgment of strict foreclosure against "the real property located at 765 Elm Street, New Haven, *i.e.* the location of the historic Yeshiva school building."  Doc. 69 at 2. . . . Defendants further represent that "[t]he judgment of strict foreclosure was affirmed on appeal earlier this year*, see Mirlis v. Yeshiva of New Haven, Inc.*, 205 Conn. App. 206 (2021), and a petition for certification to appeal to the Connecticut Supreme Court was recently denied."  *Id.*
>
> On September 24, 2021, the Yeshiva filed a motion in the Foreclosure Action apparently seeking, in part, to substitute a cash bond for the judgment lien.  *See* Foreclosure Action, at D.I. 147.00. In this motion, the Yeshiva references the Defendants' Motion to Modify in the present action and claims that "[i]f granted, the Yeshiva will have sufficient funds to substitute a bond" for the

> judgment. *Id.* at ¶ 4. In the Foreclosure Action motion, the Yeshiva also opposed Mirlis's separate Motion to Reset Law Day After Appeal, which requested that Judge Cirello "enter the shortest possible law day." *Id.*, at D.I. 146.00, ¶ 12. The Yeshiva, by contrast, urged that that Judge Cirello should "stay proceedings pending adjudication" of certain outstanding motions or, alternatively "set an extended law day so that the Yeshiva has sufficient time to adjudicate the [Motion to Modify]." *Id.*, at D.I. 147.00, ¶ 9. Judge Cirello has set the new law day at January 31, 2022. *See id.*, at D.I. 152.00; D.I. 146.20. However, Judge Cirello has not yet ruled on the Yeshiva's motion to substitute.

Doc. 98 at 9-10 (footnote omitted).

Given the foregoing summary of the Foreclosure Action, the Court then identified the issues it did not resolve, either because they were better suited to the discretion of the Connecticut Superior Court or because they were outside the scope of its TRO Clarification Ruling. For example, the Court did not address Defendants' proposal in their Reply Memorandum in Support of Motion to Modify Temporary Restraining Order ("Defendants' Reply Memorandum") to "*purchase* the Yeshiva building for the fair-market value found by the Court in the [Foreclosure Action]" ("Defendants' Purchase Proposal"). Doc. 76 at 3. The Court noted that Defendants Purchase Proposal, "(1) which Defendants apparently mention for the first time as an alternative to funding the Yeshiva's satisfaction of the Foreclosure Action lien and (2) which Plaintiff does not accept, falls outside the scope" of the Court's Ruling. Doc. 98 at 10 n.4.

Next, turning directly to Defendants' request to modify the TRO, the Court stated that "the TRO is meant to prevent Defendants from transferring or encumbering their personal or real property (1) for the benefit of non-Party Yeshiva, non-Party Greer and related non-Parties; and (2) in a way that significantly reduces Plaintiff's ability to recover the underlying Judgment against Greer and the Yeshiva." *Id.* at 12. Furthermore:

> Although transferring funds from Defendants such that the Yeshiva can "[keep] its school building and [continue] to operate," certainly

5

benefits the Yeshiva, it does not significantly reduce Plaintiff Mirlis's ability to recover the underlying Judgment. Doc. 69 at 11. Mirlis is also the Plaintiff in the Foreclosure Action against the Yeshiva. Accordingly, unlike Defendants' proposal to pay the Yeshiva's lawyers, Mirlis himself would be the ultimate recipient of any funds authorized by the Connecticut Superior Court in lieu of his judgment lien. Moreover, as Mirlis states, the Foreclosure Action is "based on the underlying judgment entered against [Greer] and the Yeshiva by the Hon. Michael Shea." Doc. 92 at 2. Therefore, the concern underpinning the TRO – that Defendants will place their assets beyond Mirlis's reach and reduce his ability to recover the Judgment – is not implicated by Defendants' second proposed modification.

*Id.* at 12-13.

Based on this analysis, the Court determined that:

I need not "modify" the TRO to "allow" the Defendants to take the proposed action with respect to Foreclosure Action. The more appropriate course for me to take is to *clarify* the TRO by stating, as I do, that I would not regard Defendants' transfer of funds to the Yeshiva to satisfy the judgment lien as a violation of the TRO the Court entered in the present case.

*Id.* at 14.

However, recognizing the need for certain conditions circumscribing Defendants' requested transfer of funds, the Court ordered that:

Defendants may make the requested transfer if, but only if: (1) the Connecticut Superior Court rules that the Yeshiva has the right to make a substitution in the Foreclosure Action; (2) the transfer is made to the Yeshiva in accordance with the Connecticut Superior Court's instructions regarding the form and preservation of any such substitution; (3) if Defendants must transfer assets to obtain the substitution (for example, the sale of property for funds to substitute for the judgment lien), they must do so only to the extent necessary to obtain the substitution; and (4) the effect of a substitution, followed by a final judgment in Plaintiff's favor in the Foreclosure Action, will be immediate partial satisfaction of Plaintiff's judgment against the Yeshiva, in the amount determined by the Connecticut Superior Court in the Foreclosure Action.

Finally, if the Connecticut Superior Court authorizes the Yeshiva to substitute cash for the judgment lien in the Foreclosure Action,

> Defendants must transfer funds to the Yeshiva only in the precise amount the Connecticut Superior Court authorizes.
>
> This is the resolution in the Foreclosure Action that the record on the present motion contemplates.  For the reasons stated *supra*, Defendants' [Motion to Modify] is DENIED.  To the extent that the Motion to Modify asks that the TRO be clarified, this request is GRANTED, and the TRO is clarified in the manner set forth in this Ruling.

*Id.* at 15-16.

## II. SUBSEQUENT PROCEEDINGS IN THE FORECLOSURE ACTION AND THE PRESENT VEIL PIERCING ACTION

On January 23, 2022, the Yeshiva filed notice in the Foreclosure Action of the TRO Clarification Ruling in the Present Veil Piercing Action.  *See* Foreclosure Action, at D.I. 158.00. In its Notice, the Yeshiva concluded that "assuming the [Connecticut Superior Court] affords [the Yeshiva] its right to substitute a cash bond as collateral in lieu of the [Yeshiva Property], [the Yeshiva] has immediate access to the funds necessary to do so."  *Id.* at 2.

However, on January 24, 2022, following oral argument, Judge Cirello denied the Yeshiva's motion to make a substitution in the Foreclosure Action.  *See* Foreclosure Action, at D.I. 159.00.  In making this decision (the "January 24, 2022 Order"), Judge Cirello "[took] into account the entire record as well as," *inter alia*, the following facts: (1) the Yeshiva currently does not have enough funds to produce the cash bond; (2) the Yeshiva's counsel did not present potential buyers for the assets mentioned during the arguments or a plan on how the bond would be financed; and (3) the Yeshiva's counsel could not provide the current market value of the school and relied upon the appraised value of the subject property, which was $620,000 pursuant to a prior decision dated February 24, 2020.  *Id.* at 2-3.  Judge Cirello further stated that, if he were to grant the Yeshiva's motion to substitute, "there are no reassurances provided to [Plaintiff Mirlis] when and how the cash bond would come in to being, or any assurances that the debt owed would be paid."

*Id.* at 3.  Nevertheless, Judge Cirello extended the law day to February 22, 2022.  *Id.*  Plaintiff represents that Judge Cirello extended the law day "because applicable precedent required him to do so in order to afford the Yeshiva an opportunity to appeal."  Doc. 100 at 2.

On January 28, 2022, Plaintiff filed his Motion for Reconsideration in the Present Veil Piercing Action.  In this context, Plaintiff stated that he "anticipates that the Yeshiva will likely appeal," and "the appeal will automatically stay enforcement of the judgment of strict foreclosure." Doc. 99-1 at 1 n.1.  Therefore, "Mr. Mirlis . . . seeks reconsideration to protect his rights in the unlikely event that the Yeshiva is successful on appeal or otherwise."  *Id.*

On February 3, 2022, the Yeshiva filed a Renewed Motion in the Foreclosure Action to (1) Reopen Judgment for Purposes of Extending the Law Day and (2) to Substitute Bond (the "Second Motion to Open").  *See* Foreclosure Action, at D.I. 162.00.  In the Second Motion to Open, which the Court understands to be the appeal Plaintiff anticipated, the Yeshiva again requests permission to substitute a bond.  *Id.* at ¶ 3.  The Yeshiva also requests that the Connecticut Superior Court "extend the law day to March 22, 2022."  *Id.*

In the Second Motion to Open, the Yeshiva argues that "the concerns raised by [Judge Cirello] in the [January 24, 2022 Order] have been addressed."  *Id.* at ¶ 19.  Specifically, the Yeshiva states, *inter alia*, that Defendants will have "$620,000.00 cash on hand within a short period of time."  *Id.* at ¶ 10.  These funds would be generated from two sources: (1) sale proceeds from the sale of two real estate parcels that are "anticipated" to be "in excess of $500,000;" and (2) Defendants' "cash reserves."  *Id.*  Regarding the two real estate parcels, the Yeshiva notes that Defendants in the Present Veil Piercing Action "are about to enter into contract for the sale of property located at 51-53 Pendleton Street, New Haven and 727 Elm Street, New Haven. A closing is expected to occur prior to the end of February 2022."  *Id.* at ¶ 11.  Accordingly, the Yeshiva

"anticipates" being able to finance a bond substitution "by February 28, 2022." *Id.* at ¶ 2. Plaintiff

objects to the Second Motion to Open on the grounds that, *inter alia*, the Yeshiva has no right to

substitute a bond in the Foreclosure Action and that the valuation of $620,000 would be

inequitable. *See* Foreclosure Action, at D.I. 165.00. The Connecticut Superior Court has not yet

ruled on the Yeshiva's Second Motion to Open. The Yeshiva's reply to Plaintiff's objection

claims, *inter alia*, that (1) the value of the property for purposes of substituting a bond has already

been established; and (2) the Yeshiva's proposed sale will generate sufficient cash proceeds to post

a cash bond. *See* Foreclosure Action, at D.I. 166.

On February 4, 2022, Plaintiff filed a Request for Expedited Consideration of his Motion

for Reconsideration ("Request for Expedited Consideration"), Doc. 100, in the Present Veil

Piercing Action. Plaintiff argued:

> [T]his Court's [Ruling] on the Motion for Reconsideration
> necessarily impacts the Second Motion to Open and would be
> beneficial to the parties and the Superior Court. As this Court is
> aware, it is [the TRO Clarification Ruling] that permitted the
> Defendants, on certain conditions, to provide the funding to the
> Yeshiva for a cash bond if permitted by the Superior Court. If the
> Motion for Reconsideration is granted and the Court alters its
> decision on permitting the Defendants to fund a bond for the
> Yeshiva (if approved by the Superior Court on the terms delineated
> by this Court), the Yeshiva and by implication the Defendants can
> no longer rely on the Defendants' assets to fund a bond.

Doc. 100 at 3. The Court stated that it would decide Plaintiff's Motion for Reconsideration on or

before February 21, 2022. *See* Dkt. 102.

On February 11, 2022, the Yeshiva filed the following documents in support of its Second

Motion to Open in the Foreclosure Action: (1) a signed sales contract concerning "727 Elm Street

and 51 Pendleton Street, New Haven, Connecticut;" and (2) a redacted bank statement of "FOH

Inc." (which the Court understands to be a Defendant in the Present Veil Piercing Action). Foreclosure Action, at D.I. 164.00.

## III.  DISCUSSION OF PLAINTIFF'S MOTION FOR RECONSIDERATION

As discussed *supra*, Plaintiff represents that his Motion for Reconsideration is an effort to "protect his rights" *if* the Connecticut Superior Court grants the Yeshiva permission to substitute funds for the judgment lien in the Foreclosure Action.  Doc. 99-1 at 1 n.1.  Since the Yeshiva's Second Motion to Open is presently *sub judice* before Judge Cirello, it remains to be seen whether the Yeshiva will ultimately receive this permission.[3]  If it does, the TRO Clarification Ruling enables the Defendants in the Present Veil Piercing Action, subject to certain conditions, to transfer funds to the Yeshiva to cover amount of the substitution.

Based on the assertion that Defendants would not ultimately retain title to the Yeshiva Property after transferring these funds, Plaintiff's Motion for Reconsideration argues that a substitution of funds in the Foreclosure Action would result in a reduction of the aggregate available assets against which he could enforce his Judgment.  Because this aggregate reduction contradicts the purpose of the TRO, Plaintiff argues, it would result in manifest injustice. Moreover, Plaintiff claims that the Court did not consider the data underpinning his Motion for Reconsideration and the Court has therefore committed clear error.   Accordingly, Plaintiff concludes that the Court should grant his Motion for Reconsideration.  The below sections discuss Plaintiff's motion in more detail.

---

[3]      In line with the Court's TRO Modification Ruling, this Ruling does not address (1) whether the Yeshiva has the right to make a substitution in the Foreclosure Action; (2) the form of any such substitution; (3) the cash value, if applicable, of any such substitution; or (4) any related questions. These issues are suited for the Connecticut Superior Court, and nothing in this Ruling expresses or intimates any views on the part of this Court on how they should be resolved.

A. Plaintiff's Motion Stems from his Assertion that Defendants Would Not Ultimately Retain Title to the Yeshiva Property After Their Proposed Fund Transfer to the Yeshiva

The foundation of Plaintiff's Motion for Reconsideration is this fact: after giving the Yeshiva funds to cover a substitution authorized by the Connecticut Supreme Court, the Defendants in the Present Veil Piercing Action would not ultimately retain title to the Yeshiva Property. Instead, the Yeshiva itself would retain title to the Yeshiva Property "free and clear" of Plaintiff's Judgment. *See id.* at 1. The immediate consequence of this fact, Plaintiff argues, is that any fund transfer would effectuate a reduction in Defendants' assets equal to the amount of the fund transfer. *See id.* at 5. The Court notes that, if Defendants would ultimately retain title to the Yeshiva Property after the fund transfer, their assets would not ultimately be reduced in the amount of the fund transfer. This is because gaining the title to the Yeshiva Property would offset the loss Defendants accrued by giving the Yeshiva funds to substitute for the judgment lien. Therefore, Defendants would ultimately break even, and their assets would not be reduced. However, since Plaintiff represents that Defendants would not retain title to the Yeshiva Property, there would be nothing to balance the loss, and Defendants would incur a reduction in assets equal to the amount of the fund transfer.

B. Plaintiff Argues that a Reduction in Defendants' Assets Leads to an Aggregate Reduction Problem

Plaintiff further argues that this reduction in Defendants' assets would result in a reduction of the aggregate available assets against which Plaintiff could enforce his Judgment if he is successful in the Present Veil Piercing Action. Plaintiff illustrates his argument on this point with an example. *See id.* at 5. Plaintiff begins his example by making two assumptions for the purposes of his Motion for Reconsideration only: (1) Defendants have an aggregate pool of assets worth

11

$10 million[4] from which Plaintiff could recover if successful in the Present Veil Piercing Action and (2) the Yeshiva Property is worth $620,000.[5]  Plaintiff then uses these figures as follows.

If Defendants' assets were not reduced through the fund transfer described in Section III.A *supra*, Plaintiff states that he could recover the full amount of these assets if he is successful in the Present Veil Piercing Action.  The total value of Defendants' assets in Plaintiff's example is $10 million.  Additionally, Plaintiff would acquire $620,000 by selling the Yeshiva Property after foreclosing on his judgment lien in the Foreclosure Action.  Accordingly, if Defendants' assets were not reduced through the fund transfer as described in Section III.A *supra*, there would be $10.62 million available for Plaintiff to partially recover his Judgment if he is successful in the Present Veil Piercing Action.

By contrast, if Defendants' assets were reduced through the fund transfer described in Section III.A *supra*, then Plaintiff would collect the amount of Defendants' assets minus the amount of the fund transfer.  If the Defendants transferred $620,000 to the Yeshiva to substitute for the value of the Yeshiva Property, Defendants would have assets worth only $9.38 million: $10 million minus $620,000.  Additionally, Plaintiff would acquire $620,000 in the Foreclosure Action via the substitution and fund transfer.  Accordingly, if Defendants' assets were reduced through the fund transfer as described in Section III.A *supra*, there would be only $10 million ($9.38 plus $620,000) available for Plaintiff to partially recover his Judgment if he is successful

---

[4]    This figure comes from Defendants' representation that they "collectively own real property in New Haven conservatively valued at over $10 million."  Doc. 69 at 3.

[5]    Plaintiff represents that "the $620,000 valuation of the property is based on appraisals from 2019 and a court valuation decision from approximately two years ago, so that the actual value is believed to be substantially higher."  Doc. 99-1 at 5.  In turn, Plaintiff argues, the Aggregate Reduction Problem is exacerbated, since "the reduction in the recovery on the [Judgment] would be substantially more than $620,000."  *Id.*

in the Present Veil Piercing Action.  The Court refers to the issue Plaintiff identifies through his example as the "Aggregate Reduction Problem."[6]

In describing the Aggregate Reduction Problem, Plaintiff emphasizes that "neither the Yeshiva nor the Defendants, individually or collectively, have sufficient resources to satisfy the underlying [Judgment] of approximately $22-$23 million." *Id.* at 4.  Indeed, the Court notes that, if Defendants had assets far exceeding the amount of Plaintiff's Judgment, it is highly unlikely that reducing such assets by the amount of the fund transfer would adversely affect Plaintiff's ability to recover the Judgment if he is successful in the Present Veil Piercing Action.  However, Defendants themselves represent that the aggregate value of the properties they own is $10 million. *See* Doc. 69 at 3.  This figure is significantly less than the amount of Plaintiff's Judgment. Moreover, although Defendants represent that most of their rental properties "are also income producing," they do not represent that their assets are worth more than the amount of Plaintiff's Judgment.  *Id.* at 6.

C.  <u>Plaintiff Claims the Aggregate Reduction Problem Results in Manifest Injustice</u>

Plaintiff argues that the Aggregate Reduction Problem "would be manifestly unjust" and "would run contrary to the purpose of the TRO" in the Present Veil Piercing Action.  *Id.* at 7.  In this context, Plaintiff quotes the Court's finding that the TRO is intended "to **prevent Defendants from transferring** or encumbering **their personal or real property** (1) for the benefit of the Yeshiva, Greer and related non-Parties; and (2) **in a way that significantly reduces Plaintiff's ability to recover the underlying Judgment against Greer and the Yeshiva**."  *Id.* at 3 (quoting Doc. 98 at 12 (emphasis added)).  Moreover:

---

[6]    Plaintiff refers to this issue as the "double-reduction problem."  *See, e.g.*, Doc. 99-1 at 6.  The Court finds that "Aggregate Reduction Problem" describes the issue more accurately. Accordingly, the Court uses this term in its Ruling.

> [Plaintiff] respectfully submits that the Court appears to have not considered the second purpose of the TRO in ostensibly clarifying it to permit the Defendants to transfer assets to the Yeshiva to substitute for [Plaintiff's] judgment lien in exchange for no value and permitting the **Yeshiva** to then retain title to its real property that has been the subject of a judgment lien and related foreclosure action **free and clear** of the judgment lien and any further claim of [Plaintiff].

*Id.*

### D.  Plaintiff Claims that the Court Committed Clear Error

Finally, Plaintiff argues (1) that the Court "overlooked" the "data" discussed in his Memorandum of Law in Support of Motion for Reconsideration ("Motion for Reconsideration Memorandum"), Doc. 99-1, when deciding the TRO Clarification Ruling; and (2) this amounts to "a clear error" justifying reconsideration of the TRO Clarification Ruling.  *Id.* at 2-3 (citing, *inter alia*, *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting [ ] a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.")); *see also id.* at 6-7.

In support of this claim, Plaintiff purports to identify where the Parties introduced this data in their submissions on Defendants' Motion to Modify.  First, Plaintiff notes that, in his Memorandum in Opposition to Defendants' Motion to Modify Temporary Restraining Order ("Opposition to Defendants' Motion to Modify"), Doc. 71, he "generally identified the effect that modifying the TRO to allow the Defendants to transfer their assets to the Yeshiva so it could substitute those assets for a judgment lien would have on his ability to satisfy his judgment."  *Id.* at 6 (citing Doc. 71 at 8).  Second, Plaintiff represents that Defendants "directly identified and addressed the [Aggregate Reduction Problem]" in Defendants' Reply Memorandum.  *Id.*  In this

context, Plaintiff references Defendants' Purchase Proposal, excerpted below, which the Court

deemed outside the scope of its TRO Clarification Ruling:

> [I]n light of Plaintiff s objection that funds given by the Defendants
> to the Yeshiva to satisfy the foreclosure deprives him of such assets
> should he later prove his veil piercing claims, the Defendants have
> a simple and logical solution to that concern. Rather than the
> Defendants giving funds to the Yeshiva so that the Yeshiva can
> satisfy its foreclosure action and still retain ownership of the
> property, the Defendants will instead agree themselves to purchase
> the Yeshiva building for the fair-market value found by the court in
> the foreclosure action. ln addition, the Defendants will agree that
> such ownership of the Yeshiva building (likely by defendant
> Yedidei Hagan, Inc. for continuing religious purposes) shall then
> still be an asset available to Plaintiff should he later prove his veil
> piercing claims against the Defendant(s). **Thus, Plaintiff will be
> paid the $620,000 court ordered fair market value of the
> property, in cash, and still have the ability to collect a second
> time against the Yeshiva building should he later recover a
> judgment in this action. Plaintiff suffers no harm whatsoever by
> the Court allowing the Defendants to purchase the Yeshiva
> building out of foreclosure under these circumstances**.

*Id.* at 6-7 (quoting Doc. 76 at 3-4 (emphasis added)).  Third, Plaintiff notes that, in his Sur-Reply

to Defendants' Reply Memorandum, Doc. 92, he "opposed the Defendants' efforts to negotiate a

resolution of the bond substitution branch of the Motion to Modify through a Court filing, but did

not dispute the very real [Aggregate Reduction Problem]."  *Id.* at 7.  Here, Plaintiff notes the

Court's finding that Defendants' proposal was outside the scope of the TRO Clarification Ruling,

but states that "the Court did not consider" the effect of the Aggregate Reduction Problem on

Plaintiff's ability to collect on his judgment. *Id.* at 7.

## IV. LEGAL STANDARD AND SUMMARY OF APPLICATION

"A motion for reconsideration under Local Rule 7 is not favored and rarely granted."  *SLSJ,*

*LLC v. Kleban*, No. 3:14-CV-390 (CSH), 2020 WL 6806160, at *2 (D. Conn. Nov. 19, 2020); *see*

*also* D. Conn. L. Civ. R. 7(c)(1) (dictating that a motion for reconsideration "shall satisfy the strict

standard applicable to such motions" and "will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order").

However, the Court can "reconsider a prior decision in the same case if there has been an intervening change in controlling law, there is new evidence, or a need is shown to correct a clear error of law or to prevent manifest injustice." *Chance v. Machado*, No. 3:08-CV-000774 CSH, 2013 WL 1830979, at *1 (D. Conn. Apr. 30, 2013) (citation and internal quotation marks omitted). Moreover, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (internal quotation marks omitted) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)). For example, in a separate matter, this Court granted a plaintiff's motion to reconsider the Court's ruling when the "justice of the cause" required further proceedings on an issue not sufficiently argued during the relevant hearing. *Kleban*, 2020 WL 6806160, at *2.

"Courts ordinarily have not defined precisely what constitutes clearly erroneous or manifest injustice for reconsideration purposes. At least one court has held . . . that reconsideration is not warranted unless the prior decision is 'dead wrong.'" *In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*, No. 02 CIV. 3143 RWS, 2007 WL 4563485, at *1 n.1 (S.D.N.Y. Dec. 18, 2007). In Plaintiff's Motion for Reconsideration Memorandum, he states that, "[i]n the context of a motion for reconsideration, 'manifest injustice' is defined as an error committed by the trial court that is direct, obvious, and observable." Doc. 99-1 at 2 (citing *Talyosef v. Saul*, No. 3:17-CV-01451 (KAD), 2020 WL 3064229, at *3 (D. Conn. June 9, 2020) (quoting *Corpac v. Rubin & Rothman, LLC*, 10 F. Supp. 3d 349, 354 (E.D.N.Y. 2013)), *aff'd*, 848 F. App'x 47 (2d Cir. 2021)).

Applying this standard to Plaintiff's Motion for Reconsideration, the Court makes two findings.  First, the data submitted in Plaintiff's Motion for Reconsideration Memorandum constitutes new evidence, which was not made available to the Court at the time of its TRO Clarification Ruling.  Therefore, the Court did not commit clear error resulting in manifest injustice by "overlook[ing]" this data in its TRO Clarification Ruling.  Doc. 99-1 at 3.  This finding is discussed in Section V, *infra*.  Second, the introduction of this new evidence nonetheless provides a compelling reason to reconsider the TRO Clarification Ruling.  Specifically, it results in the Aggregate Reduction Problem, which violates the purpose of the TRO in the Present Veil Piercing Action.  This finding is discussed in Section VI, *infra*.

## V.  THE COURT'S TRO CLARIFICATION RULING WAS NOT IN ERROR

As summarized in Section III *supra*, the Aggregate Reduction Problem hinges on (1) the fact that Defendants would not ultimately retain title to the Yeshiva Property after transferring funds to the Yeshiva, so nothing would offset Defendants' asset reduction; and (2) the argument that Defendants' asset reduction would unjustly result in an aggregate reduction of the pool of assets from which Plaintiff could recover his Judgment if he is successful in the Present Veil Piercing Action.  However, at the time of its TRO Clarification Ruling, the Court was not aware that Defendants would not ultimately retain title to the Yeshiva Property after transferring funds to the Yeshiva.  This was because (1) Defendants represented in briefs on their Motion to Modify that the Yeshiva Property would be subject to the TRO after the proposed fund transfer; and (2) Plaintiff did not specifically state the factual analysis underpinning the Aggregate Reduction Problem in his briefs opposing the Motion to Modify.  Accordingly, the fact that Defendants would not ultimately retain title to the Yeshiva Property after transferring funds to the Yeshiva is new evidence presented as part of Plaintiff's Motion for Reconsideration.  Therefore, the Court did not

overlook this data, and the Court's findings in its TRO Clarification Ruling did not amount to clear error or manifest injustice.

A. Defendants Represented that the Yeshiva Property was Subject to the TRO, which Would Solve the Aggregate Reduction Problem

Defendants' representations in support of their Motion to Modify suggested that the Yeshiva Property would, ultimately, be subject to the TRO after the proposed fund transfer and thus be available to satisfy Plaintiff's Judgment if he succeeds in the Present Veil Piercing Action. If this were true, Defendants' contemplated fund transfer would be offset by the value of the Yeshiva Property. Therefore, Defendants' assets would not ultimately be reduced, and the Aggregate Reduction Problem would not arise.

Several times in the briefs supporting their Motion to Modify, Defendants state that the Yeshiva Property would be subject to the TRO.  In their initial Motion to Modify, for example, Defendants represented that they did not challenge the TRO remaining in place as to any transfer and/or encumbrances relating to the real property they own, "other than if necessary to sell a property to satisfy the debt owed on the foreclosure of the Yeshiva school building, **which would then also be subject to the TRO.**"  Doc. 69 at 3 n.2 (emphasis added).  Similarly, in Defendants' Reply Memorandum, they reiterate:

> As explained in the opening motion . . . if this Court allows for the requested modification of the TRO and the Defendants indeed satisfy the judgment of strict foreclosure and then become the owners of the Yeshiva's school building, **the building would also become subject to the TRO in this case** as property owned by the Defendants.

Doc. 76 at 4 (emphasis added).[7]

---

[7]      The Court interprets these statements about the "Yeshiva['s] school building" as referring to the Yeshiva Property.  Moreover, when Defendants describe their proposed fund transfer as

As discussed in Section I *supra*, the TRO in the Present Veil Piercing Action enjoins Defendants from transferring or encumbering any of their real or personal property, which would be available to satisfy Plaintiff's Judgment if he is successful in the Present Veil Piercing Action. Accordingly, Defendants' representation that the Yeshiva Property would be subject to the TRO suggests that the Yeshiva Property would ultimately become the property of Defendants and thus be available to satisfy Plaintiff's Judgment.  Therefore, the Aggregate Reduction Problem would be avoided.

By contrast, in his Motion for Reconsideration Memorandum, Plaintiff argues that Defendants' Purchase Proposal "directly identified" the Aggregate Reduction Problem, "but the Court did not consider the reduction of available assets that will be caused by the [TRO Clarification Ruling] on [Plaintiff's] ability to collect on his [Judgment.]."  Doc. 99-1 at 6-7.  As discussed *supra*, Defendants' Purchase Proposal specifically contemplated purchasing the Yeshiva Property and agreeing that ownership of the Yeshiva Property, "likely by [D]efendant Yedidei Hagan, Inc." will then "still be an asset available to Plaintiff should he later prove his veil piercing claims against the Defendant(s)."  Doc. 76 at 3.  The Court ruled that Defendants' Purchase Proposal fell outside the scope of its TRO Clarification Ruling.  Doc. 98 at 10 n.4.

However, simply because the Court's TRO Clarification Ruling did not address Defendants' alternative ideas about how they might ultimately acquire the Yeshiva Property does not mean that the Court failed to consider the Aggregate Reduction Problem.  For the Court's purposes, it was sufficient to know that the Yeshiva Property would eventually be subject to the

---

"Plaintiff receives funds now, and the Yeshiva keeps its school building and continues to operate," the Court does not interpret these statements as contradicting Defendants' representations that the Yeshiva Property would be subject to the TRO.  Doc. 69 at 11.  Instead, in this context, the Yeshiva "keep[ing] its school building" apparently refers to the Yeshiva's continued operation rather than the actual title to the Yeshiva Property.

TRO and hence available to satisfy Plaintiff's Judgment if he succeeds in the Present Veil Piercing Action.  In this context, the Court notes that the Parties were attempting to resolve the issues underpinning the Motion to Modify prior to the Court's TRO Clarification Ruling.  *See* Dkt. 95. If Defendants were negotiating with Plaintiff about the details of how the Yeshiva Property would ultimately become subject to the TRO and/or which Defendant would ultimately own the Yeshiva Property, this was, as the Court stated, "outside the scope" of the TRO Clarification Ruling.  Doc. 98 at 10 n.4.

### B. Plaintiff Did Not Present the Factual Analysis in His Motion for Reconsideration Memorandum in His Briefs Opposing Defendants' Motion to Modify

Plaintiff did not present the factual analysis underpinning the Aggregate Reduction Problem in his submissions on Defendants' Motion to Modify, which further supports the Court's finding that the TRO Clarification Ruling was not in error.

In Plaintiff's Motion for Reconsideration Memorandum, he refers to page eight of his Opposition to Defendants' Motion to Modify, where he claims that he "generally identified the effect that modifying the TRO to allow the Defendants to transfer their assets to the Yeshiva so it could substitute those assets for a judgment lien would have on his ability to satisfy his judgment." Doc. 99-1 at 6.  However, this portion of Plaintiff's Opposition to Defendants' Motion to Modify mainly discusses Plaintiff's counterarguments to Defendants' assertions that they were established to support the Yeshiva.  Moreover, although Plaintiff refers to Defendants dissipating their "liquid assets" to "pay the attorneys' fees and expenses of the Yeshiva and provide it with funds to post a bond," Plaintiff neither (1) counters Defendants' claim that the Yeshiva Property will ultimately be subject to the TRO; nor (2) lays out the Aggregate Reduction Problem as he does in his Motion

for Reconsideration Memorandum.  *See* Doc. 71 at 8.  Indeed, nowhere in his briefs opposing Defendants' Motion to Modify does Plaintiff directly lay out the Aggregate Reduction Problem.

Plaintiff's claim that he opposed Defendants' Purchase Proposal as an improper effort "to negotiate a resolution," but did not dispute the Aggregate Reduction Problem it allegedly identifies does not undermine the Court's finding on this point.  Doc. 99-1 at 7.  First, as discussed in Section V.A *supra*, Defendants' Purchase Proposal merely proposed an alternative mechanism by which Defendants would ultimately acquire the Yeshiva Property.  Moreover, Defendants represented several times in their briefing on the Motion to Modify that the Yeshiva Property would be subject to the Court's TRO after the proposed fund transfer to the Yeshiva.  If this were the case, as discussed in Section V.A *supra*, the Aggregate Reduction Problem would not exist.  Second, not disputing an issue allegedly raised by an opposing Party does not equate to affirmatively raising that issue.  Although Defendants' Purchase Proposal was made "in light of Plaintiff's objection that funds given by the Defendants to the Yeshiva to satisfy the foreclosure deprives him of such assets should he later prove his veil piercing claims," Plaintiff did not specifically identify the Aggregate Reduction Problem in his Opposition to Defendants Motion to Modify.  Doc. 76 at 3.  As discussed above, if Plaintiff objected to the specifics of Defendants' Purchase Proposal during Parties' failed attempts to resolve the Motion to Modify prior to the Court's TRO Clarification Ruling, these side negotiations were not within the scope of that Ruling.

In sum, the fact that Defendants would not ultimately retain title to the Yeshiva Property after their proposed fund transfer is new evidence presented in Plaintiff's Motion for Reconsideration Memorandum.  Therefore, the Court did not commit clear error in its TRO Clarification Ruling by "overlook[ing]" this data.  Doc. 99-1 at 3.

## VI. THE COURT'S TRO CLARIFICATION RULING MUST NONETHELESS BE RECONSIDERED IN LIGHT OF NEW EVIDENCE

The new evidence presented in Plaintiff's Motion for Reconsideration Memorandum nonetheless represents a "compelling" reason to reconsider the Court's TRO Clarification Ruling. *Johnson*, 564 F.3d at 99. Specifically, this new evidence results in the Aggregate Reduction Problem, which violates a key purpose of the TRO: "to prevent Defendants from transferring or encumbering their personal or real property . . . in a way that significantly reduces Plaintiff's ability to recover the underlying Judgment against Greer and the Yeshiva." Doc. 98 at 12. Accordingly, Plaintiff's Motion for Reconsideration is GRANTED.

However, the Court also reiterates that, if Defendants would ultimately retain title to the Yeshiva Property to offset the loss of funds due to their proposed transfer, the Aggregate Reduction Problem would not arise. Accordingly, the Court revises its TRO Clarification Ruling to include an additional condition circumscribing Defendants' proposed fund transfer to the Yeshiva. That additional condition is bolded in the excerpt below. The Court's revised Order in the TRO Clarification Ruling is as follows:

> The Court ORDERS that Defendants may make the requested transfer if, but only if: (1) the Connecticut Superior Court rules that the Yeshiva has the right to make a substitution in the Foreclosure Action; (2) the transfer is made to the Yeshiva in accordance with the Connecticut Superior Court's instructions regarding the form and preservation of any such substitution; (3) if Defendants must transfer assets to obtain the substitution (for example, the sale of property for funds to substitute for the judgment lien), they must do so only to the extent necessary to obtain the substitution; (4) the effect of a substitution, followed by a final judgment in Plaintiff's favor in the Foreclosure Action, will be immediate partial satisfaction of Plaintiff's judgment against the Yeshiva, in the amount determined by the Connecticut Superior Court in the Foreclosure Action; and **(5) Defendants ultimately retain title to**

**the Yeshiva Property to compensate for the reduction in Defendants' assets resulting from the transfer.**[8]

Finally, if the Connecticut Superior Court authorizes the Yeshiva to substitute cash for the judgment lien in the Foreclosure Action, Defendants must transfer funds to the Yeshiva only in the precise amount the Connecticut Superior Court authorizes.

This is the resolution in the Foreclosure Action that the record on the present motion contemplates. For the reasons stated *supra*, Defendants' [Motion to Modify] is DENIED. To the extent that the Motion to Modify asks that the TRO be clarified, this request is GRANTED, and the TRO is clarified in the manner set forth in this Ruling.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration is GRANTED. Moreover, the Court's Order in the TRO Clarification Ruling is revised as set forth in Section VI *supra*.

It is SO ORDERED.

Dated:   New Haven, Connecticut
         February 21, 2022

                                        */s/ Charles S. Haight, Jr.*
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge

---

[8]    In the TRO Clarification Order, the Court stated that Defendants' "interest in using their funds in such a way that Mirlis's judgment lien against the building is satisfied and the Yeshiva retains possession of the Yeshiva Property" would not violate the TRO. Doc. 98 at 15. To the extent that this language contradicts the Court's revised Order in the TRO Clarification Ruling, this language is stricken from the TRO Clarification Ruling.