UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELIYAHU MIRLIS, <br><br>          Plaintiff, <br><br> v. <br><br> EDGEWOOD ELM HOUSING, INC. F.O.H., INC., EDGEWOOD VILLAGE, INC., EDGEWOOD CORNERS, INC., and YEDIDEI HAGAN, INC., <br><br>          Defendants. | Civil Action No. <br> No. 3:19-cv-700 (CSH) <br><br><br> NOVEMBER 3, 2022 |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. 51] AND ON PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER [Doc. 104]

**HAIGHT, Senior District Judge:**

This energetically litigated diversity action presents several disputed motions. Defendants move for summary judgment. Plaintiff moves by order to show cause to hold Defendants in contempt of a prior Court order and impose sanctions. Plaintiff also moves to compel discovery. Counsel filed elaborate briefs, and presented oral arguments at a hearing. This Ruling addresses the currently pending motions.

### I.  Background and Procedural History

The nature and circumstances of this case are thoroughly stated in the five earlier decisions the Court has entered. In chronological order, those decisions are reported at:  2020 WL 4369268 (July 30, 2020), ruling denying Defendants' motion to dismiss complaint ("*Mirlis I*");  2021 WL 2109082 ( May 24, 2021), memorandum and order on Defendants' motions for summary judgment

and for a stay ("*Mirlis II*");  2021 WL 4125447 (September 9, 2021), supplemental memorandum and order on Defendants' motions for summary judgment and for a stay ("*Mirlis III*");  581 F. Supp. 3d 394 (January 21, 2022),  ruling on Defendants' motions to modify previously entered temporary restraining order and to seal certain documents ("*Mirlis IV*"); and 2022 WL 522109 (February 21, 2022), ruling on Plaintiff's motion for reconsideration of the ruling in *Mirlis IV* ("*Mirlis V*").

Familiarity with those decisions is assumed.  The background of the case is not stated again in full.  For present purposes, it is sufficient to say that from 2001 to 2005, Plaintiff Eliyahu Mirlis, then a teenager, was a boarding student at the Yeshiva of New Haven, Inc. ("the Yeshiva"), an orthodox Jewish religious school in New Haven.  Daniel Greer, an ordained rabbi, was the principal owner and head of the Yeshiva.

While Mirlis was a student at the Yeshiva, Greer subjected him to repeated sexual abuse. After Mirlis graduated from the Yeshiva, he moved to New Jersey and filed a diversity action in this Court against Greer and the Yeshiva for damages caused by that abuse.  I will call this "the Underlying Action." *See Mirlis v. Greer*, No. 3:16-CV-00678 (MPS). The Underlying Action, tried before Judge Shea and a jury, resulted in a judgment for $21,749,041.10 in favor of Mirlis and against Greer and the Yeshiva, jointly and severally.  The Second Circuit affirmed that judgment on appeal, in an opinion dated March 3, 2020.  *See Mirlis v. Greer*, 952 F.3d 36, 51 (2d Cir. 2020), *cert. denied*, 209 L. Ed. 2d 8, 141 S. Ct. 1265 (2021).

Mirlis's multi-million dollar judgment against Daniel Greer and the Yeshiva remains unsatisfied.  Greer, in his 70s, was convicted in a Connecticut state court for his criminal conduct against Mirlis, and is presently serving a lengthy sentence.  The Yeshiva still has a corporate existence, but is inactive.  Mirlis is seeking partial enforcement of his judgment against the Yeshiva

by foreclosing on a building the Yeshiva owns in New Haven.  That foreclosure action is pending in the Connecticut courts, which have held thus far that the fair market value of the property is $620,000.  *See Mirlis v. Yeshiva of New Haven, Inc.*, 205 Conn. App. 206 (2021), *cert. denied*, 338 Conn. 903 (2021).

During the course of this related litigation, it  has become apparent that if Mirlis is to make  additional significant recoveries on his multimillion dollar  judgment against Daniel Greer and the Yeshiva, funds for that purpose must come from  sources other than them.  The present action in this Court is an effort by Mirlis in that regard.  Mirlis, as Plaintiff, sues  Defendants who are five non-profit Connecticut corporations engaged, in one way or another, with the ownership of residential properties in New Haven which produce rental income.  Mirlis contends that these corporations are liable to pay his unsatisfied judgment against non-parties Greer and the Yeshiva.  That asserted liability is based upon the equitable doctrine known as "reverse corporate veil piercing."

A detailed analysis of Plaintiff's theory of the case appears in *Mirlis I*, which denied the Defendants' motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's complaint. The principal issues between the parties now resurface in the form of Defendants' motion [Doc. 51] under Rule 56 for summary judgment, which Plaintiff resists..

A time came in the litigation when Mirlis obtained from the Court a temporary restraining order against the five corporate Defendants.  *See* Doc. 43 ( herein "the TRO").  The TRO enjoined the Defendants from transferring or encumbering their personal or real property, other than to pay any of their employees except for Daniel Greer, and to "perform reasonable maintenance on real property they own." *See Mirlis IV,* 581 F. Supp. 3d at 397.  The purpose of the TRO is to ensure that Defendants have assets with which to respond if they are ultimately held liable, on Plaintiff's veil

piercing claim, to pay Plaintiff's judgment against Greer and the Yeshiva.   Plaintiff now makes a motion [Doc. 104] for an order declaring that Defendants violated the TRO, and imposing sanctions. Defendants resist that motion.

## II.  The Pending Motions

Following comprehensive briefing and oral arguments of counsel, the Court is presented with two contested motions: the corporate Defendants' motion for summary judgment [Doc. 51], which if granted would dispose of Plaintiff Mirlis's claims against them; and Plaintiff's motion to enforce the TRO, previously entered against the Defendants [Doc. 104].

In addition to their disputes on the merits of these motions, the parties disagree on the order in which the Court should decide them, and whether factual discovery should precede any decision. These differing points of view were expressed during the hearing on June 16, 2022, a conference where the Court discussed with counsel for the parties the status of the several pending motions. At the outset of said conference, I expressed my purpose to explore "where we are now and where we're going next and how we're going to get there." Hearing Transcript ("Tr.") 2: 18.

Mr. Cesaroni, counsel for Plaintiff, stressed the importance of Plaintiff's claims that the Defendant corporations were distributing their assets in manners that violated the TRO.  Counsel argued at the conclusion of the hearing that "the most important thing from Mr. Mirlis's perspective is to make sure that the purpose and the actual language of the TRO are enforced and part of that is to not transfer money away to other entities. . . . [W]e really stress to the Court that we think this needs to be addressed first and foremost." Tr. 45: 3-7, 10-12. Mr. Beatman, Mr. Cesaroni's co-counsel, added that "the issue of contempt is an important one and, in fact, it's really a gatekeeper issue in the context of the Court has entered an order and our client's desire to having that order

followed." *Id.* 49: 3-6.

Mr. Colbert, counsel for the Defendant corporations, contended that "it would make sense to hold in abeyance the issues related to the motion for contempt until the summary judgment is decided," because "if the summary judgment were to go our way, all of those issues would be moot." *Id.* 28: 15-19.  Expanding on that argument, Mr. Colbert then said to the Court  "that there's really not much to this emergency motion [about the TRO] and that the best course of action is for you to take up the summary judgment, and if you determine in taking up that summary judgment that there's an issue of fact that we're mistaken on, . . . advise us that there's discovery that's needed on that and we can do that, of course, but we think that's the most expeditious way to move this case along." *Id.* 38: 7-15.

Counsel for Defendants have consistently taken the position that Defendants are entitled to summary judgment on the present record, although Plaintiff has obtained no discovery to date. Plaintiff's counsel has demanded the completion of extensive discovery before being required to respond to Defendants' summary judgment  motion.  In *Mirlis III*, I rejected both of these extreme contentions. 2021 WL 4125447, at*2.  Having reconsidered the entire case, with the further assistance of able counsel for the parties, I adhere to that conclusion, and hold that some discovery must precede the Court's decision on Defendants' summary judgment motion.  I reach the same conclusion with respect to Plaintiff's TRO  motion.

### III.  Plaintiff's Entitlement to Discovery

Defendants filed their motion for summary judgment before Plaintiff had obtained any of the discovery he says he desires.  This timing is problematic.  It is generally expected in civil litigation that pre-trial discovery precedes summary judgment practice.  The Supreme Court stated in

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986),   "*Following discovery*, petitioners moved for summary judgment pursuant to Federal Rule of Civil Procedure 56."  *Id.* at  245 (emphasis added). In *GMA Accessories, Inc. v.  Croscill, Inc.*, No. 06 Civ. 6236 (GEL), 2007 WL 766294, at *1 (S.D.N.Y. March 13, 2007), District Judge Lynch (as he then was) observed that "summary judgment motions prior to discovery are disfavored."  That observation is mildly phrased; Judge Lynch followed it immediately with this quotation from *Hellstrom v. United States Dep't of Veterans Affairs*, 201 F.3d 94 (2d Cir. 2000): "Only in the rarest of cases may summary judgment be granted against a [party] who has not been afforded the opportunity to conduct discovery." *Id.* at 97 (citations omitted).  In *Hellstrom,* the Second Circuit vacated the summary judgment granted to defendant because plaintiff "was denied the opportunity to conduct discovery."  *Id*. at 98.

A summary judgment for defendant was vacated for the same reason in *Sutera v. Schering Corp.*, 73 F.3d 13 (2d Cir. 1995), where the Second Circuit explained:

> A party opposing a motion for summary judgment must have had the opportunity to discover information that is essential to his opposition to the motion. Summary judgment was entered before any discovery had taken place. In these circumstances, it cannot be said that plaintiff had a full and fair opportunity to show that Schering's articulated reason for his dismissal was pretextual.

*Id.* at 18 (citations and internal quotation marks omitted).

These Second Circuit decisions furnish specific applications of the Supreme Court's general statement in *Anderson*, that summary judgment practice under Rule 56 takes place "following discovery." 477 U.S. at 245.  Thus *Sutera* holds that discovery must precede a summary judgment motion if the information sought to be discovered "is essential to [a party's] opposition to the motion." 73 F.3d at 18 (citation and internal quotation marks omitted).

Consistent with that principle, this Court in the case at bar, having rejected Defendants'

6

contention that Plaintiff should suffer the fate of a summary judgment without obtaining any discovery, directed Plaintiff "to oppose with specificity the particular bases for summary judgment identified by Defendants," including in that opposition an affidavit of counsel "that he is entitled by Rule 56(d) to specific discovery in areas germane to the particular issues raised by the motion." *Mirlis III*, 2021 WL 4125447, at *5.[1]   Mr. Cesaroni responded to that direction with a sworn declaration under Rule 56(d), filed on November 22, 2021, whose stated purpose was "to identify specific subjects on which Plaintiff requires discovery in order to properly respond to Defendants' . . . motion for Summary Judgment."   Doc. 82, ¶ 2.

Plaintiff's theory of the case against these corporate Defendants is that Daniel Greer exercised total domination and control over the non-party and judgment debtor Yeshiva, and also over the Defendants, such that the Yeshiva and Defendants were operated as a single "Enterprise," thereby rendering the Defendants liable to pay the judgment Plaintiff has obtained against Greer and the Yeshiva.

On Plaintiff's perception of the facts, the alleged Enterprise functions when three of the five corporate Defendants (Edgewood Corners, Edgewood Village, and  F.O.H.),  the "Upstream Entities," transfer rental income and other funds to the other two Defendants (Yedidei Hagan and Edgewood Elm), the "Downstream Entities,"  which in  turn pass those funds on to the Yeshiva or to Greer, in manners that enable those judgment debtors to evade the judgment in the Underlying Action and violate the TRO.  Doc. 1, ¶ 54.

---

[1]  Rule 56(d), Fed. R. Civ. P.,  provides that if a nonmovant shows "it cannot present facts essential to justify its opposition" to a motion for summary judgment, the district court may, *inter alia*, "allow time to obtain affidavits or declarations *or to take discovery*."  Fed. R. Civ. P. 56(d)(2) (emphasis added).

Plaintiff's complaint alleges that the interaction between Daniel Greer, the Yeshiva, and the five corporate Defendants gives rise to viable claims for reverse veil piercing, under the instrumentality and identity rules. *Mirlis I* analyzes these alternative bases of veil piercing liability. At this stage of the litigation, Plaintiff also presses a claim that Defendants' distribution of assets violate the TRO.

Counsel's declaration [Doc. 82], which undertakes to summarize the discovery needed to prove these claims, focuses not surprisingly upon the financial relationships of the corporations involved and the conduct of the individuals directing them. Financial documents generated by the corporations are demanded. Depositions of individuals with knowledge of relevant facts are requested.

It is useful to review the chronology of the case. Plaintiff Mirlis was a student at the Yeshiva from the Fall of 2001 to the Spring of 2005. During this period, Daniel Greer began his sexual abuse of Mirlis. Mirlis filed the Underlying Action against Greer and the Yeshiva in 2016. After a jury trial, Judge Shea entered a judgment for $21,749,041.10 for Mirlis and against Greer and the Yeshiva on June 6, 2017. The Second Circuit affirmed that judgment on March 3, 2020. Plaintiff filed his instant complaint against the five corporate Defendants on May 8, 2019. Defendants' motion to dismiss the action was held in abeyance pending the appeal of Greer and the Yeshiva in the Underlying Action. However, following the Second Circuit's affirmance, this Court reinstated Defendants' motion to dismiss the present action against them, and denied that motion on July 30, 2020, in the opinion reported at *Mirlis I*.

Confronted by Plaintiff's discovery demands, counsel for Defendants take the position that no discovery is required or appropriate, and Defendants are entitled to summary judgment based on

public documents in the present record, the pleadings, and affidavits of Daniel Greer and others affiliated with him.

I cannot accept that contention.  Plaintiff invokes against these corporate Defendants the equitable remedy of reverse corporate veil piercing.  I sit in the case as a modern heir of that historic figure of the Law, the Chancellor in Equity.[2]  I have the equitable power to direct that these non-profit corporations pay a judgment entered against Daniel Greer and the Yeshiva.  However, the Defendants' liability to do so depends upon Plaintiff proving a particular set of factual propositions.

In *Campisano v. Nardi*, 212 Conn. 282, 292-93 (1989), the Supreme Court of Connecticut held that whether an actor's conduct  demonstrates a fraud or wrong justifying veil piercing "must depend upon the factual background of the particular case."  In the case at bar, Plaintiff Mirlis contends that the factual background of the interrelationships between Daniel Greer, the Yeshiva, and the five corporate Defendants triggers reverse corporate veil piercing.  Plaintiff must prove that theory.  He is entitled to engage in pre-trial discovery in an effort to do so.  Plaintiff is not required to accept, without further inquiry or cross-examination, the *ipse dixit* declarations of individuals whose interests are counter to his, or to regard a limited number of documents as reflective of the contents of a more complete file.

It follows from these considerations that Plaintiff is entitled to the discovery described in counsel's declaration [Doc. 82], subject to one temporal limitation.  In Cesaroni's declaration, it is said that in order to respond to Daniel Greer's declaration, "Plaintiff requires production of financial records from D. Greer, Defendants, and the Yeshiva from the Yeshiva's and the Defendants'

---

[2]  "Chancery" is defined as "[a] court of equity." *Black's Law Dictionary* (11th ed. 2019). "The term is derived from the court of the Lord Chancellor, the original English court of equity." *Id.*

respective inception, or at least from the date the abuse of Plaintiff began and his claims against D. Greer and the Yeshiva arose." Doc. 82, ¶ 18.  The five Defendants were registered as Connecticut non-profit corporations between May 1984 (the first, Yedidei Hagan) and June 1999 (the last, F.O.H.).  Plaintiff Mirlis was a student at the Yeshiva from 2001 through 2005.  As counsel's declaration implicitly recognizes, the financial relations between Greer, the Yeshiva and the Defendants during earlier years, before Mirlis attended the Yeshiva and endured abuse by Daniel Greer, have no probative value with respect to the factual issues in suit.  Discovery related to that period will not be compelled.

The discovery otherwise described in counsel's declaration is appropriate, and must be accomplished by counsel for the parties, acting in good faith.  That discovery relates to both the Defendants' summary judgment motion and the Plaintiff's TRO motion, since the questions posed overlap.  For example, Plaintiff's submissions raise a legitimate question about the propriety of certain payments to Sarah Greer, given the TRO.  Plaintiff wishes to conduct discovery on that subject, and is entitled to do so.

If disputes arise about whether particular discovery is compelled by this Order, the Court will resolve them.

## IV.  Conclusion and Order

The pending motions in this case are complex.  There is a considerable amount of evidence – documentary and testimonial – which bears upon the issues and is subject to discovery.  The governing law in this circuit requires that discovery be completed before summary judgment is sought.  The Defendants' compliance with the TRO stands on the same footing.  The issues presented by the two motions are closely related, and there is nothing to be said for deferring

discovery on Plaintiff's TRO motion until after resolution of Defendants' motion for summary judgment. Able counsel must therefore work together in good faith to accomplish the discovery called for by this Memorandum and Order. The Court's decision on the motions is held in abeyance until that discovery is completed.[3]

For the foregoing reasons, the Court makes this Order:

1. This Memorandum and Order governs discovery proceedings in relation to Defendants' pending motion [Doc. 51] for summary judgment, and in relation to Plaintiff's pending motion [Doc. 104] for judgment of contempt of the TRO and sanctions.

2. The parties are directed to complete discovery in a manner that complies with this Memorandum and Order.

3. The Court's decision on these motions is held in abeyance until the completion of discovery, and the Court's consideration of such further submissions of counsel as counsel may be advised to make at that time.

4. The parties are directed to compete this discovery with reasonable dispatch. If discovery has not been completed by January 31, 2023, counsel are directed to submit written status reports on February 3, 2023.

It is SO ORDERED.

Dated:   New Haven, Connecticut
            November 3, 2022

                                              /s/Charles S. Haight, Jr.
                                              CHARLES S. HAIGHT, JR.
                                              Senior United States District Judge

---

[3]   The parties may wish to reconsider the possibility of a mediated settlement. The Court will arrange the assistance of a Magistrate Judge in such an effort, if requested by counsel.