UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ELIYAHU MIRLIS,
    *Plaintiff*,

v.

EDGEWOOD ELM HOUSING, INC. et al.,
    *Defendants*.

Case No. 3:19-cv-700 (CSH)
September 14, 2023

## RULING ON MOTION FOR PROTECTIVE ORDER

**HAIGHT, Senior District Judge:**

On September 7, 2023, the Court held a virtual hearing attended by attorneys representing Plaintiff Eliyahu Mirlis; Defendants Edgewood Elm Housing, Inc., F.O.H., Inc., Edgewood Village, Inc., Edgewood Corners, Inc., and Yedidei Hagan, Inc. (collectively, "Defendants"); and third-party Crosby Law Firm, LLC. The primary subjects of the hearing were the Crosby Law Firm's Motion to Quash Subpoena [Doc. 135] and a potential extension of the discovery period, which had been set to close on September 22, 2023. Following the hearing, I issued an electronic order [Doc. 140] extending the period to complete discovery until December 21, 2023, with the intention of allowing the Parties to compile a complete record upon which to prepare any future motions for summary disposition.

Briefly discussed, but not resolved, at the September 7 hearing was Defendants' Motion for Protective Order [Doc. 129] ("Motion"), which seeks an order quashing Plaintiff's depositions of Defendants' corporate representatives. *See generally* Doc. 129. Plaintiff objects to the Motion. *See generally* Doc. 130. As of September 1, 2023, the Motion has been fully briefed, and with the period for discovery having been extended, it is now ripe for resolution.

# I. BACKGROUND

The Court assumes the reader's familiarity with the background of this action, which is recounted in the Court's prior decisions.[1]

In my November 3, 2022 ruling, I instructed the parties to complete discovery with respect to two pending motions "with reasonable dispatch," requiring the parties to provide an update on the status of discovery by February 3, 2023. *Mirlis VI* at 6. On February 1, 2023, the parties jointly requested an extension of the discovery deadline until April 5, 2023. Doc. 118. I granted that request. Doc. 119. On April 6, 2023, the Parties again requested an extension of the discovery deadline until September 22, 2023. Doc. 120. I also granted that request, but stated that the September 22, 2023 "deadline is peremptory. It will not be further extended absent unusually compelling circumstances." Doc. 121.

With the September deadline looming, Plaintiff served a second set of interrogatories and requests for production on Defendants, with Defendants' response due by July 10, 2023. See Doc. 124. At 4:07 PM on the business day before that deadline, Defendant requested a thirty-day extension, to which Plaintiff objected.[2] *Id.* I granted Defendants only a ten-day extension. *Id.* On July 18, 2023, Defendants returned—this time with the consent of Plaintiff—again requesting an extension until August 10, 2023 to respond in light of ongoing negotiations between the parties. Doc. 125. I granted this extension, and Defendants appear now to have met that deadline. Doc. 126.

---

[1] Those decisions are reported at: 2020 WL 4369268 (July 30, 2020), ruling denying Defendants' motion to dismiss complaint ("*Mirlis I*"); 2021 WL 2109082 ( May 24, 2021), memorandum and order on Defendants' motions for summary judgment and for a stay ("*Mirlis II*"); 2021 WL 4125447 (September 9, 2021), supplemental memorandum and order on Defendants' motions for summary judgment and for a stay ("*Mirlis III*"); 581 F. Supp. 3d 394 (January 21, 2022), ruling on Defendants' motions to modify previously entered temporary restraining order and to seal certain documents ("*Mirlis IV*"); 2022 WL 522109 (February 21, 2022), ruling on Plaintiff's motion for reconsideration of the ruling in *Mirlis IV* ("*Mirlis V*"); 2022 WL 16722395 (November 3, 2022), ruling granting discovery ("*Mirlis VI*").
[2] Defendants represented that they did "not believe the requested extension of time [would] jeopardize the parties' ability to meet [the September 22, 2023] deadline." Doc. 123 ¶ 6.

On July 28, 2023, Plaintiff directed notices of deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) to each of the Defendants.[3] Doc. 129 at 1. The depositions were scheduled for August 14, 15, 16, 17, and 18, 2023. Docs. 129-1–129-5. Concerned about the breadth of topics in the notices, on August 10, 2023, counsel for Defendants held a meet and confer with counsel for Plaintiff to attempt to resolve their disagreements without the Court's involvement. Doc. 129-6 ¶ 4. Unable to agree on acceptable modifications, counsel for Defendants moved the following day to quash the notices of deposition in their entirety. *See generally* Doc. 129; *see also* Doc. 129-6 ¶ 5.

Plaintiff objects to Defendants' Motion and seeks an order requiring Defendants to "expeditiously produce one or more corporate representatives to testify regarding the topics set forth in the notices [.]" Doc. 130 at 1.

## II. LEGAL STANDARD

In determining the scope and sequence of discovery, Rule 26 of the Federal Rules of Civil Procedure "vests the trial judge with broad discretion[.]" *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). The Rules provide, generally, that discovery may "reach[] all information that is relevant but not privileged. For discovery purposes, courts define relevance broadly, regarding information as relevant if it 'bears on' or might reasonably lead to information that 'bears on' any material fact or issue in the action." *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 72 (D. Conn. 2010).

While the general scope of discovery is broad, Rule 30(b)(6) places limits on the breadth of information that can be sought in the deposition of a corporate representative. Pursuant to Rule 30(b)(6), a party seeking to depose a corporate entity must provide the organization with a notice

---

[3] Rule 30(b)(6) governs notices of oral deposition directed to an organization.

3

that "describe[s] with reasonable particularity the matters for examination." Upon receipt of the notice, "[t]he named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf[.]" *Id.* "The persons designated must testify about information known or reasonably available to the organization." *Id.*

The import of a Rule 30(b)(6) notice is substantial, both because the designee's testimony becomes binding on the organization, and because the designee's inability "to answer questions that fall within the scope of a proper Rule 30(b)(6) notice can be tantamount to a failure to appear and may subject the [entity] to sanctions[.]" *Winfield v. City of New York*, No. 15CV05236 (LTS) (KHP), 2018 WL 840085, at *5 (S.D.N.Y. Feb. 12, 2018) (citing *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 268–69 (2d Cir. 1999)).

As this and other courts have observed, the purpose of the Rule 30(b)(6) deposition is for the corporation to testify

> vicariously through its designee. If the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation. . . .
> [T]he designee must not only testify about facts within the corporation's knowledge, but also its subjective beliefs and opinions. The corporation must provide its interpretation of documents and events. The designee, in essence, represents the corporation just as an individual represents him or herself at a deposition.

*Krasney v. Nationwide Mut. Ins. Co.*, No. 3:06-CV-1164 (JBA) (JGM), 2007 WL 4365677, at *2 (D. Conn. Dec. 11, 2007) (quoting *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996)). *See also U.S. Reg'l Econ. Dev. Auth., LLC v. Matthews*, No. 3:16-CV-01093 (CSH), 2018 WL 2172713, at *11 (D. Conn. May 10, 2018) (distinguishing between a deposition of an individual as an employee of a corporation and a deposition of that individual as a corporate representative).

4

Accordingly, the requirement of "reasonable particularity" serves two purposes. First, it allows the organization to be examined to identify a designee capable of speaking knowledgeably about, and binding the organization with respect to, those topics. *Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002). Second, it allows the designee, as a natural person who may not naturally possess the knowledge and opinions of the organization, to prepare appropriately for the deposition.

"'Reasonable particularity' requires the topics listed to be specific as to subject area and to have discernible boundaries. This means that the topics should not be listed as 'including but not limited to;' rather, they must be explicitly stated. Additionally, the topics should be substantively and temporally relevant to the claims or defenses." *Winfield v. City of New York*, No. 15CV05236 (LTS) (KHP), 2018 WL 840085, at *5 (S.D.N.Y. Feb. 12, 2018) (citations omitted).

Furthermore, "[l]ike other forms of discovery, a Rule 30(b)(6) Notice is subject to limitations under Rule 26[.]" *Dongguk*, 270 F.R.D. at 72. "The deposition topics must be relevant to any party's claim or defense" and, in addition to being described with reasonable particularity, "should be proportional to the needs of the case [and] not unduly burdensome or duplicative[.]" *Bigsby v. Barclays Cap. Real Est., Inc.*, 329 F.R.D. 78, 81 (S.D.N.Y. 2019) (quoting Fed. R. Civ. P. 26(b)(1)).

Examples of overly broad topics include the following: a request for a designee who is "most knowledgeable as to the subject Complaint[,]" *Sheehy v. Ridge Tool Co.*, No. 3:05-CV-1614 (CFD) (TPS), 2007 WL 1548976, at *3–4 (D. Conn. May 24, 2007); "The continuing hostile work environment [a plaintiff] was subjected to[,]" *Krasney*, 2007 WL 4365677, at *2; "All defenses[,]" *id.*; "the content and meaning" of the more than 100,000 documents produced in *another* case, *Sticht v. Wells Fargo Bank, N.A.*, No. 3:20-CV-1550 (VAB), 2023 WL 2206641, at *7 (D. Conn.

5

Feb. 24, 2023); "demand for, marketing of, and advertising for [certain products], including predictions or surveys related to the current or future markets for [those products]," when the plaintiff sought to question the deponent only about specific advertisements, *CM Systems, LLC. v. Transact Tech. Inc.*, No. 3:22-CV-624 (JCH) (RAR), 2023 WL 5604340, at *7 (D. Conn. Aug. 30, 2023); "[a]ll documents produced . . . in this action since July 12, 2018," *Martino v. Nationstar Mortg. LLC*, No. 3:17-CV-01326 (KAD), 2019 WL 10255236, at *1 (D. Conn. Oct. 30, 2019); and the steps deponents took to assemble documentary discovery and designate materials as privileged, *Parimal v. Manitex Int'l, Inc.*, No. 3:19-CV-01910 (MPS) (SALM), 2020 WL 6689395, at *4 (D. Conn. Nov. 13, 2020) (describing such topics as "'discovery on discovery,' which is not warranted on the current record").

### III. DISCUSSION

Plaintiff has sent notices to all five defendants that list substantially identical topics for the deponent to be prepared to address. The topics are quoted verbatim as follows:

1. [Defendant's] finances, including without limitation, its bank accounts, tax returns, daily ledgers, balance sheets, profit and loss statements, and audits, or other review of financial statements, compilation or review performed by a CPA or licensed or certified individual.
2. [Defendant's] books and records, including without limitation, its corporate charter, bylaws, minutes of any meetings of its board of directors, Unanimous Consents in l[i]eu of meetings, and corporate resolutions.
3. [Defendant's] internal management, control, and accounting processes, including without limitation, payroll, bookkeeping methods and processes, employee responsibilities, leases, and rent rolls.
4. External professional services performed on behalf of [Defendant], including without limitation, accountants, attorneys, financial advisors, and payroll management services.
5. [Defendant's] board of directors, including any changes to the Board of Directors as a result of resignation, appointment, Board expansion or contraction, or otherwise.
6. The management of [Defendant] including, its officers, and changes to its officers as a result of appointment or resignation, the duties and responsibilities of each officer.

7. The operations of [Defendant], including without limitations, the marketing, use or lease of any real estate, including apartments, owned by [the five Defendants], the [non-party Yeshiva of New Haven, Inc. ("Yeshiva")], and/or [non-party Daniel Greer ("D. Greer")] and how daily financial decisions are made.
8. Any transfer of any property or services made by [Defendant] to or for the benefit of [the other four Defendants].
9. Any transfers of any property or services made to or for the benefit of [Defendant] by of [the other four Defendants].
10. Any transfers of any property or services made by [Defendant] to or for the benefit of the Yeshiva, [non-party Sarah Greer ("S. Greer"), the wife of D. Greer], and/or D. Greer.
11. Any transfers made of any property or services to or for the benefit of [Defendant] by the Yeshiva, S. Greer, and/or D. Greer.
12. Any payments made to and non-privileged communications with any attorneys representing the Yeshiva, S. Greer and/or D. Greer, including without limitation, any communications regarding any payments made or contemplated by [Defendant] to the Yeshiva, S. Greer and/or D. Greer, invoices and billing practices.
13. Any indemnification of D. Greer by [Defendant], including without limitation, any discussions and non-privileged communications regarding [Defendant's] decision to indemnify D. Greer.
14. All documents produced by [Defendant] to Mr. Mirlis in discovery in this action.
15. The allegations of Mr. Mirlis' Complaint in this action and any defenses of [Defendant] to the claims made against it regardless of whether pled.
16. [Defendant's] Motion for Summary Judgment filed in this Action, including the evidence and affidavits submitted in support thereof.
17. The Motion for Contempt filed in this Action by Mr. Mirlis.

*See, e.g.*, Doc. 129-1. With respect to all topics, Plaintiff specifies a relevant time period of from January 1, 2010 to the present. *Id.* at 3.

These seventeen topics, and the numerous subtopics they include, are broad. At the same time, Plaintiff is entitled to discovery concerning his fact-intensive equitable claim of reverse veil piercing, in support of his effort to enforce a judgment of more than $21 million. Plaintiff's theory of the case, as I recounted in *Mirlis VI*,

> is that Daniel Greer exercised total domination and control over the . . . Yeshiva, and also over the Defendants, such that the Yeshiva and Defendants were operated as a single "Enterprise," thereby rendering the Defendants liable to pay the judgment Plaintiff has obtained against Greer and the Yeshiva. On Plaintiff's perception of the facts, the alleged Enterprise functions when three of the five corporate Defendants (Edgewood Corners, Edgewood Village, and F.O.H.), the "Upstream

7

> Entities," transfer rental income and other funds to the other two Defendants (Yedidei Hagan and Edgewood Elm), the "Downstream Entities," which in turn pass those funds on to the Yeshiva or to Greer, in manners that enable those judgment debtors to evade the judgment in the Underlying Action and violate the [temporary restraining order]. Plaintiff's complaint alleges that the interaction between Daniel Greer, the Yeshiva, and the five corporate Defendants gives rise to viable claims for reverse veil piercing, under the instrumentality and identity rules.

*Mirlis VI* at *4. Plaintiff is also entitled to discovery concerning his claim that financial transfers made while this litigation has been underway violate the temporary restraining order ("TRO") enjoining Defendants from transferring or encumbering their real or personal property, with limited exceptions. *Id.* at *2.

Accordingly, in *Mirlis VI*, I concluded that "Plaintiff is entitled to the discovery described in counsel's declaration [Doc. 82], subject to one temporal limitation[:]" that discovery be available only for the time period since Mirlis began attending the Yeshiva and endured abuse by Greer. *Mirlis VI* at *5. With that exception, Plaintiff is therefore entitled to discovery on the following general topics described in Doc. 82, Declaration of John L. Cesaroni ("Cesaroni Declaration"):

> i. The financial information of Defendants and others;
> ii. The management and operations of [] Defendants and others;
> iii. The relationships among Defendants and between Defendants and others;
> iv. The use of properties owned by Defendants to perpetrate the sexual abuse against the Plaintiff;
> v. D. Greer's involvement with the Yeshiva and Defendants as officer and/or director;
> vi. Property owned by Defendants;
> vii. Officers, directors, and employees of Defendants;
> viii. Transactions between Defendants and the Yeshiva;
> ix. Individuals who provide services to Defendants;
> x. Who hires, fires, and manages employees of Defendants;
> xi. Transfers made by Defendants; and
> xii. Debts owed to or by Defendants.

Cesaroni Decl. at 4.

The topics listed in Plaintiff's Rule 30(b)(6) Notices coincide with those listed in the Cesaroni Declaration. Both sets of topics consist of relevant areas of inquiry reasonably calculated

8

to lead to the discovery of admissible evidence in light of the equitable claims this case involves. Nonetheless, Defendants argue that these particular Rule 30(b)(6) Notices fail to meet the requirement of "reasonable particularity." *See generally* Doc. 129.

It is worth recalling the dual purposes served by the requirement of "reasonable particularity": first, to enable the organization to identify an appropriate designee, and second, to enable the designee to prepare for the deposition. *See Innomed Labs, LLC*, 211 F.R.D. at 240. The noticed topics must therefore be specific enough to facilitate this identification and preparation. When the corporate entity is large and its personnel are highly specialized, these tasks are especially difficult. There may be no individual employee who has been involved in the relevant decisions and actions of the organization and who can testify from personal memory and experience about them. In such cases, reasonable particularity in the circumstances likely requires a heightened degree of specificity. But in cases where only one or two individuals manage an organization, and that organization has few other employees, reasonable particularity in the circumstances may be a lower hurdle to clear.

Here, as Plaintiff represents, "Defendants are not multi-national corporations with thousands of employees and terabytes of electronic data that would need to be reviewed . . . . Rather, they are . . . five intertwined entities that have common or overlapping officers, directors, employees, and agents." Doc. 130 at 8. In Plaintiff's telling, the corporate designees Defendants might name "are likely limited to D. Greer, S. Greer, and Jean Ledbury, the Defendants' long-time bookkeeper." *Id.* This is an important point, and Defendants do not contest it in their reply brief. *See generally* Doc. 133. I will consider this context in determining whether each proposed topic satisfies the requirements of reasonable particularity.

Defendants also argue that Plaintiff should first depose fact witnesses in their individual capacities, and only after doing so should her be permitted to depose organizational representatives pursuant to Rule 30(b)(6) and elicit testimony that can bind those entities. *See* Doc. 133 at 2–3. Defendants point to two cases in this District in which a party has been required to first use depositions of ordinary fact witnesses, rather than Rule 30(b)(6) depositions of organizational representatives. Both cases are distinguishable.

In the first case, Dongguk University in South Korea filed suit against Yale University after Dongguk hired an art history professor, Jeong Ah Shin, who claimed to have earned a Ph.D. at Yale. 270 F.R.D. 70, 72. Dongguk alleged that "Yale improperly confirmed that Shin had received a Ph.D. from Yale [and later] wrongly told the media that it had not verified her Ph.D." *Id.* Yale served a Rule 30(b)(6) notice upon Dongguk identifying thirty topics, of which Dongguk objected to eighteen. One of these was Topic 7, regarding "[a]ny communications between or among Dongguk and the media concerning Jeong Ah Shin, Yang Kyun Byeon [an individual potentially involved in Shin's hiring] or Yale, including but not limited to any Dongguk press conferences, press releases, or public statements concerning Jeong Ah Shin[], Yang Kyun Byeon or Yale between 2005 and the present." *Id.* at 75. Dongguk had already "produced all communications between or among Dongguk and the media concerning Shin, Yang Kyun Byeon or Yale, and all press releases and articles concerning those subjects." *Id.* Yale had also already noticed depositions of three Dongguk employees, including Dongguk's president, in their individual capacities. *Id.* As a result, the Court granted the motion to quash Topic 7 "on the current record[,]" leaving open the possibility for Yale to renew its notice on Topic 7 after the depositions of the three Dongguk employees if it still felt that the discovery taken was inadequate. *Id.* at 75–76.

10

In the second case, a plaintiff in an action for employment retaliation against a statewide agency under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, sought "the designation of a witness to testify regarding the specific process used in investigating plaintiff's complaints." *Bosse v. Dep't of Econ. & Cmty. Dev.*, No. 3:20-CV-0760 (JCH) (SDV), 2021 WL 6337745, at *4 (D. Conn. May 12, 2021). The Court concluded "that statements about the specific procedures used and actions taken in the investigation of plaintiff's complaints are best left to fact depositions of those individuals who conducted the investigation[,]" and accordingly modified the text of the proposed topic to focus on learning the identities of the individuals involved in the review of any complaints, initiation of any investigations, and adoption or rejection of the investigations' conclusions. *Id.* The Court allowed the deposition on this topic as modified to proceed, along with twelve other topics, including the relatively broad sub-topics of "how union grievances are investigated" and "the process for investigating union grievances." *Id.*

*Dongguk* and *Bosse* shed little light on the present case. In *Dongguk*, the topic was merely "communications" that had already been produced in written form, and although one consideration before the Court was that depositions of three Dongguk employees, including Dongguk's president, were pending, the Court also allowed Yale to seek to re-notice its Rule 30(b)(6) deposition after the individual depositions were complete. In *Bosse*, the plaintiff's claim concerned a relatively straightforward allegation of Title VII employment retaliation, and the Court concluded that the best avenue for exploring this narrow factual inquiry was for plaintiff to depose the relevant investigators in their individual capacities. Notably, the Court did allow the plaintiff to proceed with Rule 30(b)(6) depositions on other topics (*e.g.*, "how union grievances are investigated").

In addition to these distinctions, the organizational Defendants here are small entities, unlike the organizations in *Dongguk* and *Bosse*. As Plaintiff represents, there are "very few potential

corporate designees" available here. Doc. 130 at 8. It is likely that in each case, only three individuals could testify as representatives of Defendants. *Id.* In stark contrast are the South Korean university at issue in *Dongguk* and the Connecticut statewide agency at issue in *Bosse*. While conducting individual-capacity depositions of fact witnesses in *Dongguk* and *Bosse* might be preferable to identifying and preparing an individual at a university or a statewide agency to represent and bind the entire entity, there is likely to be little difference in this case in the burdens imposed by deposing individuals as fact witnesses than deposing them as corporate representatives, other than that the fact witnesses would be unable to bind Defendants through their answers.

Most importantly, the equitable claims at the heart of this action involve not a discrete transaction or occurrence, as in *Dongguk* or *Bosse*, but an alleged pattern of actions by and between all five Defendants—in their capacity as organizations—and two non-parties, the Yeshiva and D. Greer, over the course of years. The facts Plaintiff must prove concern not only individual acts by Defendants but also the management and operational policies and practices of Defendants over a substantial period of time. Plaintiff seeks, at present, to discover this information primarily through Rule 30(b)(6) depositions rather than through depositions of individual fact witnesses. Given the nature of the parties, the posture of discovery, and the underlying claims, this is an appropriate path forward.

I now turn to the propriety of the specific topics listed in Plaintiff's Notices.

### A. Topics 1 through 7

Topics 1 through 7 deal with the management and finances of Defendants, corresponding to the Cesaroni Declaration's topics (i), (ii), (v), (vi), (vii), (ix), (x), and (xii). Topics 1 through 7, like all noticed topics, concern the relevant time period of from January 1, 2010 to the present,

well within the period allowed by the Court in *Mirlis VI*. They are therefore both "substantively and temporally relevant to the claims or defenses." *Winfield*, 2018 WL 840085, at *5.

However, Topics 1 through 7 use the phrase "including without limitation" throughout, which should be stricken. *See id.* In addition, the initial catch-all terms listed under topics 1, 2, 5, 6, and 7 ("finances," "books and records," "board of directors," "management," and "operations") are overly broad on the current record. Defendants' Motion will be granted in part with respect to Topics 1 through 7, which are therefore modified as follows:

1. [Defendant's] bank accounts; tax returns; daily ledgers; balance sheets; profit and loss statements; and audits or other compilations or reviews of financial statements performed by CPAs or other licensed or certified individuals.
2. [Defendant's] corporate charter, bylaws, minutes of any meetings of its board of directors, Unanimous Consents in lieu of meetings, and corporate resolutions.
3. [Defendant's] internal management, control, and accounting processes; payroll; bookkeeping methods; employee responsibilities; leases; and rent rolls.
4. [Defendant's] use of external accountants, attorneys, financial advisors, and payroll management services.
5. The composition of [Defendant's] Board of Directors and any changes to the Board of Directors since January 1, 2010 as a result of resignation, appointment, Board expansion or contraction, or otherwise.
6. The identities of [Defendant's] officers, any changes to the identities of the officers since January 1, 2010 as a result of appointment or resignation, and the duties and responsibilities of each officer.
7. The marketing, use, or lease of real estate by or on behalf of [Defendant], and [Defendant's] process for making daily financial decisions with respect to the marketing, use, or lease of real estate.

In each notice, the relevant Defendant's name should be substituted for the bracketed term. If counsel for Plaintiff believes that additional discovery is needed after conducting these Rule 30(b)(6) depositions, Plaintiff's counsel should notice such hearings with an accompanying filing on the docket explaining why Rule 30(b)(6) depositions on such topics are necessary.

13

### B. Topics 8 through 11

Topics 8 through 11 address the transfer of property and services to and from each Defendant and the other four Defendants, the Yeshiva, S. Greer, and D. Greer. Answers regarding these topics would advance discovery on the relevant issues identified as (iii), (vi), (viii), and (xi) in the Cesaroni Declaration. These topics are narrowly described and have "discernible boundaries." *See Winfield*, 2018 WL 840085, at *5. Accordingly, Defendants' Motion will be denied with respect to Topics 8 through 11.

### C. Topics 12 & 13

Topic 12 concerns payments made from each Defendant to the attorneys representing the Yeshiva, S. Greer, and D. Greer, and any non-privileged communications with any such attorneys, including communications regarding payments by each Defendant to the Yeshiva, S. Greer, and D. Greer. Topic 12 also includes "invoices and billing practices." The closely related Topic 13 concerns each Defendant's indemnification of D. Greer, including any discussion and non-privileged communications regarding each Defendant's decision to indemnify D. Greer.

Discovery on these topics is relevant to the underlying action, and central to Plaintiff's claim that Defendants paid the legal fees of D. Greer and the Yeshiva in violation of the Court's prohibition on such transfers in the TRO. *See* Doc. 112 at 4. Defendants argue that there is "a genuine dispute concerning the interpretation of indemnification rights enjoyed by officers of the Defendants[,]" and that "the payment of legal fees relating to the Yeshiva is entirely consistent with the supporting financial role that Defendants have played for the Yeshiva since its inception." Doc. 129 at 9–10 n. 4.

Defendants' arguments are unavailing. To the extent that there is a genuine dispute concerning the indemnification rights of D. Greer and the Yeshiva—rights whose existence could

14

support Plaintiff's veil-piercing theory, and in the exercise of which Defendants may well have violated this Court's TRO—Plaintiff is entitled to discovery regarding that dispute. Indeed, it is conceivable that the existence of broad indemnification rights might even support Plaintiff's theory of the case that Defendants, the Yeshiva, and D. Greer operated as a single "Enterprise," and it is also unclear how the existence of contractual indemnification rights would legitimize actions that were otherwise prohibited by the TRO.

Nonetheless, Topics 12 and 13 are not models of clarity. To ensure that discernible boundaries are established for these lines of inquiry, the topics will be modified as follows:

12. Any payments made by [Defendant] to the Yeshiva, S. Greer and/or D. Greer (collectively, the "Non-Parties"); any payments made by [Defendant] to attorneys on behalf of the Non-Parties; any communications between [Defendant] and the Non-Parties regarding payments to the Non-Parties or to attorneys on behalf of the Non-Parties; any communications among [Defendant's] officers, directors, and/or employees concerning such payments; any non-privileged communications between [Defendant] and the attorneys receiving such payments; any invoices [Defendant] received for such payments; and [Defendant's] billing practices with respect to such payments.
13. Any internal practices, policies, discussions, or non-privileged communications regarding the indemnification of D. Greer by [Defendant].

As with Topics 1 through 7, in each notice, the relevant Defendant's name should be substituted for the bracketed term. These modifications are without prejudice to future Rule 30(b)(6) depositions if the proper showing is made.

### D. Topics 14–17

Topics 14 through 17 describe not areas of factual inquiry, but documents produced in discovery and filed in this litigation. Plaintiff seeks to name, as topics of depositions, "All documents produced . . . in discovery[,]" the allegations of the Complaint and Defendants' defenses, Defendants' Motion for Summary Judgment, and Plaintiff's Motion for Contempt. These topics are improperly broad, with one exception: to the extent that Plaintiff wishes to depose corporate

15

representatives with respect to certain evidence and affidavits submitted in support of the Motion for Summary Judgment, Plaintiff may do so. However, Plaintiff must identify with particularity the specific items of evidence and affidavits on which counsel intends to depose Defendants' corporate representatives. The number and content of such items must be reasonable in scope.

Accordingly, Defendants' Motion will be granted in part and denied in part with respect to Topics 14 through 17. The Topics will be quashed except insofar as Plaintiff may, if so advised, include in its subsequent Notices to Defendants a topic that lists items of evidence and affidavits and meets the requirements of reasonable particularity.

### IV. Conclusion and Orders

For the reasons explained herein, the Court enters the following orders:

1. Defendants' Motion for Protective Order [Doc. 129] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff may seek discovery on Topics 1 through 7 as modified above, on Topics 8 through 11 in their original form, on Topics 12 and 13 as modified above, and on certain evidence and affidavits submitted in support of Defendants' Motion for Summary Judgment. Plaintiff shall re-notice the depositions of Defendants pursuant to Federal Rule of Civil Procedure 30(b)(6) in accordance with this Ruling.

2. Plaintiff's Motion to Take Deposition from Daniel Greer, currently confined in prison, is **GRANTED**, for good cause shown. D. Greer may be deposed either as a fact witness, as a corporate representative pursuant to Rule 30(b)(6), or both.

It is SO ORDERED.

Dated at New Haven this 14th day of September 2023.

*/s/ Charles S. Haight, Jr.*
Charles S. Haight, Jr.
Senior United States District Judge
